STATE OF NORTH CAROLINA v. SAMUEL R. FLIPPEN

No. 178A95

(Filed 8 November 1996)

## 1. Homicide § 253 (NCI4th)— first-degree murder—premeditation and deliberation—injuries suffered by child

The State's evidence was sufficient to support an inference of premeditation and deliberation by defendant and thus to support submission of an issue of defendant's guilt of first-degree murder where the evidence tended to show that defendant's two-year-old stepdaughter was brutally beaten by defendant, during which time she received multiple, extensive blows to numerous areas of her body; the pathologist testified that the victim ultimately died from internal bleeding due to severe tearing of her liver and pancreas; the victim suffered six external injuries to her head, at least three injuries to her chest, injuries to her pelvis, hip bone, eye, and forehead, and bruises on her arms and right thigh; and the pathologist opined, based upon the pattern and extent of these injuries, that the injuries could not have been caused by an accidental fall from a high chair as defendant maintained, but that they were caused by multiple blows from a fist.

**Am Jur 2d, Homicide §§ 52, 228, 266, 268, 439, 501.**

STATE v. FLIPPEN

[344 N.C. 689 (1996)]

Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.

2. Evidence and Witnesses § 1685 (NCI4th)— victim's injuries—photographs and slides not repetitious or excessive

Photographs and slides introduced by the State in a prosecution of defendant for the murder of his two-year-old stepdaughter were neither repetitious nor unfairly prejudicial where the first photograph illustrated testimony by the victim's mother about the victim's appearance at the hospital; the second photograph illustrated testimony by the victim's mother about an indentation in a wall where defendant had punched his fist following an argument about the way defendant reprimanded the victim; three other photographs depicted external injuries to the victim's body and illustrated the testimony of several paramedics who first responded to assist the victim; and eight autopsy slides, each of which depicted a separate area of the victim's body, were admitted to illustrate the pathologist's testimony concerning the nature and extent of the victim's external injuries.

Am Jur 2d, Evidence §§ 960-967; Homicide §§ 416-419; Trial §§ 507, 1678.

Prejudicial error in admission in evidence of colored photographs. 53 ALR2d 1102.

Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.

3. Evidence and Witnesses § 1693 (NCI4th)— autopsy photograph not authenticated—absence of prejudice

Assuming arguendo that the trial court erred by admitting an autopsy photograph on the ground that it was not properly authenticated as a fair and accurate representation of the victim's mouth and lips at the time she received treatment from emergency medical personnel, defendant was not unfairly prejudiced by its admission where the photograph illustrated the pathologist's testimony concerning injuries to the victim's head and neck; the pathologist testified that the apparent injury to the victim's mouth and lips appeared to be the natural degenerative process of drying of the lips; and there was substantial evidence

showing multiple blunt-force impact injuries over the victim's entire body.

**Am Jur 2d, Evidence §§ 960-967; Homicide §§ 416-419; Trial §§ 507, 1678.**

**Prejudicial error in admission in evidence of colored photographs. 53 ALR2d 1102.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

4. **Evidence and Witnesses § 1958 (NCI4th)— medical records—triage nurse's report—insufficient authentication**

A triage nurse's report was not sufficiently authenticated to be admissible as part of the medical records the pathologist relied upon to formulate his opinion as to a murder victim's injuries where the pathologist was unable to state with certainty that he had either read the document or relied upon it in preparing his autopsy report, he was not the custodian of the nurse's report, and he was unaware of the circumstances under which the report had been maintained.

**Am Jur 2d, Evidence §§ 933, 1032-1048.**

**Admissibility under Uniform Business Records as Evidence Act or similar statute of medical report made by consulting physician to treating physician. 69 ALR3d 104.**

**Physician-patient privilege as extending to patient's medical or hospital records. 10 ALR4th 552.**

5. **Jury § 222 (NCI4th)— death penalty views—excusal for cause**

The trial court in a capital trial did not err by excusing for cause a prospective juror who stated in response to questions by the trial court and the prosecutor that she did not think she could vote for the death penalty.

**Am Jur 2d, Jury §§ 228, 229.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**6. Jury § 226 (NCI4th)— death penalty views—excusal for cause—no opportunity for rehabilitation**

The trial court in a capital trial did not err by excusing prospective jurors for cause on the basis of their death penalty views without allowing defendant an opportunity to rehabilitate them where the excused jurors clearly and unequivocally stated that their opposition to the death penalty would cause them to vote against its imposition under any circumstances; defendant did not request an opportunity to rehabilitate any of the prospective jurors; and there was no showing that further questioning by defendant would have produced different answers.

**Am Jur 2d, Jury §§ 228, 229.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**7. Evidence and Witnesses § 2267 (NCI4th)— pathologist's testimony—cause of death—"homicidal assault"**

The trial court did not err by permitting a pathologist's testimony that the child victim died as a result of a "homicidal assault" where the pathologist testified on *voir dire* that he used this term to characterize the victim's death in order to differentiate it from death resulting from injuries sustained over a period of time; the term "homicidal assault" was not a legal term of art and did not correlate to a criminal offense; and the testimony related to a proper opinion for an expert in the field of forensic pathology.

**Am Jur 2d, Evidence § 351; Trial § 720.**

**Necessity and effect, in homicide prosecution, of expert medical testimony as to cause of death. 65 ALR3d 283.**

**Admissibility of testimony of coroner or mortician as to cause of death in homicide prosecution. 71 ALR3d 1265.**

**8. Criminal Law § 683 (NCI4th)— capital sentencing—no significant criminal history—stipulation—mandatory peremptory instruction required**

The trial court erred by failing to give a mandatory peremptory instruction on the N.C.G.S. § 15A-2000(f)(1) mitigating circumstance that defendant had no significant history of prior criminal activity where the State and defendant stipulated that

**STATE v. FLIPPEN**

[344 N.C. 689 (1996)]

defendant had no significant history of prior criminal activity. Because of the stipulation, whether defendant had a significant history of prior criminal activity was not a factual matter for the jury to determine, and the trial court should have instructed the jury that the (f)(1) circumstance existed as a matter of law and must be given weight.

**Am Jur 2d, Trial § 1169.**

**Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by McHugh, J., on 7 March 1995, in Superior Court, Forsyth County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 11 April 1996.

*Michael F. Easley, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

*White and Crumpler, by Fred G. Crumpler, Jr., David B. Freedman, and Dudley A. Witt, for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant was tried capitally upon an indictment charging him with the first-degree murder of Brittany Hutton. The jury returned a verdict finding defendant guilty of first-degree murder on the theory of premeditation and deliberation. Following a separate capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death. The trial court, as required by law in light of the jury's recommendation, sentenced defendant to death for the first-degree murder. Defendant appeals to this Court as a matter of right from the judgment and sentence of death imposed for first-degree murder. For the reasons set forth in this opinion, we conclude that defendant received a fair trial, free from prejudicial error, but that the trial court committed error at the capital sentencing proceeding. Thus, we remand for a new capital sentencing proceeding.

The State presented evidence at trial tending to show that on 12 February 1994 defendant fatally beat his two-year-old stepdaughter, Brittany Hutton. At approximately 9:15 that morning, Tina Flippen, Brittany's mother and defendant's wife, left for work, leaving

Brittany alone with defendant. At 10:11 a.m., defendant called 911 to report that Brittany had fallen and was having difficulty breathing. Five emergency medical personnel from both the Clemmons Rescue Squad and the Forsyth County EMS responded to defendant's trailer. Several members of the rescue teams testified that when they arrived at the scene, Brittany was pale, her lips were ash gray, her pupils were fixed and dilated, and she was making gasping-type respirations. Despite rescue efforts, Brittany was pronounced dead at the North Carolina Baptist Hospital in Winston-Salem at 10:51 a.m.

Dr. Donald Jason, a forensic pathologist who performed an autopsy on the victim, testified that he observed injuries to Brittany's head, neck, chest, abdomen, back, and extremities. Dr. Jason testified that Brittany died as a result of internal bleeding due to severe tearing of her liver and pancreas. He opined that these injuries could not have been caused by an accident such as a single fall, but rather that the injuries were consistent with one or more very powerful punches or blows to Brittany's abdomen.

Defendant testified that on the morning of Brittany's death, he placed her in a high chair and then went into another room where he could not see her. While there, defendant heard a loud noise, at which time he returned to find that the child had fallen and was having difficulty breathing. Thereafter, defendant called 911 for emergency assistance.

[1] By an assignment of error, defendant argues that the trial court erred in denying his motion to dismiss the charge of first-degree murder. Defendant contends the evidence was insufficient to establish premeditation and deliberation. When a defendant moves for dismissal, the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of defendant being the perpetrator of the offense. *State v. Earnhardt,* 307 N.C. 62, 65-66, 296 S.E. 2d 649, 651 (1982). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Powell,* 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. *Id.*

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Skipper,* 337 N.C. 1, 26, 446 S.E.2d 252, 265 (1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 895 (1995). "Premeditation means that the act

was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Conner,* 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 635, 440 S.E.2d at 836.

The State's evidence tended to show that Brittany Hutton, age two years and four months, was brutally beaten, during which time defendant delivered multiple, extensive blows to numerous areas of the child's body. Dr. Jason testified that the victim ultimately died from internal bleeding due to severe tearing of her liver and pancreas. However, he also enumerated numerous external injuries that Brittany sustained, including six injuries to her head; at least three injuries to her chest; injuries to her pelvis, hip bone, eye, and forehead; and bruises on her arms and right thigh. Dr. Jason opined that based upon the pattern and extent of these injuries, Brittany's injuries could not have been caused by an accidental fall as defendant maintains, but that they were instead caused by multiple blows from a fist. When viewed in the light most favorable to the State, this forensic evidence alone is sufficient to permit an inference that defendant premeditated and deliberated the killing. The severity and extent of the injuries sustained by the helpless two-year-old child belie defendant's claim that Brittany fell from her high chair, and the trial court did not err in denying defendant's motion to dismiss. *(Cf. State v. Greene,* 332 N.C. 565, 572-73, 422 S.E.2d 730, 734 (1992); *State v. Perdue,* 320 N.C. 51, 58, 357 S.E.2d 345, 350 (1987)). This assignment of error is overruled.

[2] In another assignment of error, defendant argues that the trial court erred by admitting into evidence an excessive number of photographs and slides that depicted the deceased victim. Specifically, defendant contends that these exhibits should have been excluded because they were repetitious and their probative value was substantially outweighed by the danger of unfair prejudice. *See* N.C.G.S. § 8C-1, Rule 403 (1992). What represents an excessive number of photographs and whether the photographic evidence is more probative than prejudicial are matters within the sound discretion of the trial court. *State v. Hennis,* 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Repetitive photographs may be introduced, even if they are gruesome or revolting, as long as they are used for illustrative pur-

poses and are not offered solely to arouse prejudice or passion in the jury. *Id.* at 284, 372 S.E.2d at 526.

The photographs and slides about which defendant complains were neither repetitious nor unfairly prejudicial. Two of the photographs were introduced during the testimony of Tina Flippen, the victim's mother. The first photograph illustrated Mrs. Flippen's testimony with respect to her observation of the victim's appearance at the hospital. The second photograph depicted an indentation in a wall where defendant had punched his fist following an argument about the way defendant reprimanded the victim, an event about which Mrs. Flippen testified. Three other photographs depicted external injuries to the deceased's body and were admitted to illustrate the testimony of several paramedics who first responded to assist the victim. Finally, a series of eight autopsy slides, each of which depicted a separate area of the victim's body, was admitted to illustrate Dr. Jason's testimony concerning the nature and extent of the victim's external injuries. We conclude defendant has failed to establish an abuse of discretion in the admission of these photographs and slides.

[3] In a related assignment of error, defendant argues that State's exhibit number eight, an autopsy photograph of the victim's head and neck, was not a fair and accurate representation of the victim's mouth and lips at the time she received treatment from emergency medical personnel. In support of this argument, defendant notes that none of the paramedics who reported to the crime scene testified that they noticed any injuries to the external portions of the victim's mouth or lips. In fact, one paramedic specifically testified that he did not remember the victim's lips being in the dried and bruised condition as the photograph depicted. Thus, defendant contends State's exhibit number eight was not adequately authenticated. Defendant also argues that he was unduly prejudiced by the introduction of the photograph in that it "plants in the juror's [sic] minds the unsupported contention that the defendant brutally struck the child about her face and head prior to death."

Assuming *arguendo* that the trial court erred by admitting State's exhibit number eight on the grounds that it was not properly authenticated, we conclude that defendant was not unfairly prejudiced by its admission. In addition to showing an apparent injury to the victim's outer mouth and lips, the photograph illustrated Dr. Jason's testimony concerning injuries to the victim's forehead and neck. Further,

STATE v. FLIPPEN

[344 N.C. 689 (1996)]

Dr. Jason testified that the apparent injury to the outer mouth and lips appeared to be a drying of the lips, which is a natural degenerative occurrence after death. In light of the substantial evidence showing multiple blunt-force impact injuries over the victim's entire body, we cannot conclude that a different result might have occurred had the photograph not been admitted. Defendant's assignment of error is therefore overruled.

[4] In his next assignment of error, defendant argues that the trial court erred by denying his request to introduce into evidence defendant's exhibit number two, the triage nurse's medical report. Defendant argues that the nurse's report was relevant and admissible because it constituted a part of the medical records that Dr. Jason reviewed and relied upon to formulate his opinion as to the victim's injuries. The trial court excluded the nurse's report, ruling that "it was not properly authenticated as a medical record. The witness upon whom it was called to be authenticated was not a custodian of the records but otherwise—or otherwise affiliated with the recordkeeping facility." We agree with the trial court. Dr. Jason testified that he was unable to state with certainty that he had either read the document or relied upon it in preparing his autopsy report. While he did identify defendant's exhibit number two as a triage nurse's report, he was not the custodian of the report. Further, he was unaware of the circumstances under which the report had been maintained. Thus, the trial court committed no error.

Defendant also argues that the trial court erred in refusing to allow him the opportunity to cross-examine Dr. Jason about the triage nurse's report. However, defendant failed to assign this issue as error; therefore, it is not properly before this Court for review. N.C. R. App. P. 10. Defendant's assignment of error is overruled.

[5] In another assignment of error, defendant argues that the trial court erred in allowing the State's challenge for cause of prospective juror Judith Peebles without allowing him the opportunity to rehabilitate her. In *Witherspoon v. Illinois*, 391 U.S. 510, 522, 20 L. Ed. 2d 776, 784-85 (1968), the Supreme Court held that a prospective juror may not be excused for cause simply because he "voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." However, a juror may be excused for cause if his views on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt,*

469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985). Further, jurors may be properly excused if they are unable to " 'state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law.' " *State v. Brogden*, 334 N.C. 39, 43, 430 S.E.2d 905, 907-08 (1993) (quoting *Lockhart v. McCree*, 476 U.S. 162, 176, 90 L. Ed. 2d 137, 149 (1986)) (emphasis omitted).

When questioned by the trial court and the prosecutor, prospective juror Peebles stated that she was opposed to the death penalty and that she did not think she could vote for the death penalty. Peebles' responses indicated with unmistakable clarity that her bias against the death penalty would substantially impair her ability to perform her duties as a juror, and the trial court so ruled. The ruling of the trial court in such situations will not be disturbed absent an abuse of discretion. *State v. Wilson*, 313 N.C. 516, 526, 330 S.E.2d 450, 458 (1985). Based on Peebles' responses, we conclude that the trial court did not abuse its discretion in excusing her for cause. Defendant's assignment of error is overruled.

[6] Defendant next assigns error to the trial court's refusal to afford him an opportunity to rehabilitate prospective jurors excused for cause pursuant to *Witherspoon*, 391 U.S. at 522, 20 L. Ed. 2d at 780. We find no error with respect to any of the jurors.

While defendant has referred this Court to specific pages of the transcript to support his argument, he fails to discuss specific allegations or instances in which the trial court denied his request to rehabilitate prospective jurors or otherwise examine the venire. Nevertheless, we have carefully reviewed the relevant portions of the transcript. Under questioning by the prosecutor and the trial court, the excused jurors clearly and unequivocally stated that they were opposed to the death penalty and that their opposition to the death penalty would cause them to vote against its imposition under any circumstances. It is well established that "[t]he defendant is not allowed to rehabilitate a juror who has expressed unequivocal opposition to the death penalty in response to questions propounded by the prosecutor and the trial court." *State v. Cummings*, 326 N.C. 298, 307, 389 S.E.2d 66, 71 (1990). We note further that defendant did not request an opportunity to rehabilitate any of the prospective jurors, and only once did defendant take exception to a prospective juror's excusal. In the absence of any such request, and there being no showing that further questioning by defendant would have produced different answers, it was not error for the trial court to deny defendant

the opportunity to question the prospective jurors further. This assignment of error is overruled.

**[7]** By another assignment of error, defendant argues that the trial court erred by overruling his objection to Dr. Jason's testimony that the victim died as a result of a "homicidal assault." During *voir dire* outside the presence of the jury, Dr. Jason explained that the term "homicidal assault" is a specific term of art in the field of forensic pathology. He stated he uses the term "homicidal assault" to characterize the victim's death in order to differentiate from death resulting from injuries that were sustained over a length of time, sometimes referred to as battered child syndrome. After this explanation, the trial court allowed Dr. Jason's testimony.

In support of his assignment of error, defendant argues that the characterization of the victim's death by Dr. Jason implied to the jury that the assault necessarily was premeditated and deliberate. Further, defendant argues that the testimony was of no assistance to the jury. *See* N.C.G.S. § 8C-1, Rule 704 (1992). Finally, defendant contends that the testimony's probative value was outweighed by its prejudicial effect on the jury. *See* N.C.G.S. § 8C-1, Rule 403 (1992).

Dr. Jason's use of the term "homicidal assault" is not a legal term of art, nor does it correlate to a criminal offense. The testimony related a proper opinion for an expert in the field of forensic pathology, in light of the foundation previously laid by Dr. Jason's *voir dire* testimony. Thus, the trial court did not err in allowing Dr. Jason's testimony; the probative value was not obscured by any prejudicial effect. Defendant's assignment of error is overruled.

We conclude for the foregoing reasons that defendant's trial was free from prejudicial error. Thus, we now turn to defendant's assignments of error relating to the separate capital sentencing proceeding conducted in this case.

**[8]** By another assignment of error, defendant contends that the trial court erred by failing to give a *mandatory* peremptory instruction on N.C.G.S. § 15A-2000(f)(1), that defendant had "no significant history of prior criminal activity." The State and defendant stipulated that defendant had no significant history of prior criminal activity, yet the jury declined to find the existence of the (f)(1) mitigator. Defendant argues the trial court erred by failing to instruct the jury that because of the stipulation, it must find the (f)(1) mitigating circumstance to

STATE v. FLIPPEN

[344 N.C. 689 (1996)]

exist and must also give the circumstance mitigating weight in its decision. We agree.

The trial court gave the following peremptory instruction during its charge to the jury:

First, consider whether the defendant has no significant history of prior criminal activity. . . . Whether any history of prior criminal activity is significant is for the jury to determine from all of the facts and circumstances found from the evidence. All of the evidence presented in this case, members of the jury, tends to show that the defendant has no significant history of prior criminal activity. Furthermore, the defendant and the State in this case have stipulated that the defendant has no significant history of prior criminal activity.

Accordingly as to this mitigating circumstance, I instruct you that if one or more of you finds the facts to be as all the evidence tends to show, you would so indicate by having your foreman write "yes" in the space provided after the mitigation circumstance one on the issues and recommendation form.

Second, you must consider whether the defendant has no criminal prior history and whether you deem this to have mitigating value. . . . All of the evidence tends to show that the defendant has no prior criminal history and accordingly as to this mitigating circumstance I charge that if one or more of you find the facts to be as all of the evidence tends to show and further deems or considers that to have mitigating value, you would so indicate by having your foreman write "yes" in the space provided after mitigating circumstance two on the issues and recommendation form.

The State argues that this requested peremptory instruction complies with this Court's mandate that "in those cases where the evidence is truly uncontradicted, the defendant is, at most, entitled to a peremptory instruction when he requests it." *State v. Johnson*, 298 N.C. 47, 76, 257 S.E.2d 597, 618 (1979). The State further contends that the jury simply declined to find the mitigating circumstance, an action within its prerogative. *State v. Alston*, 341 N.C. 198, 461 S.E.2d 687 (1995) cert. denied, —— U.S. ——, 134 L. Ed. 2d 100 (1996). In *Alston*, this Court said, "even where all the evidence supports a finding that the mitigating circumstance exists and a peremptory instruction is given, the jury may nonetheless reject the evidence and not

find the fact at issue if it does not believe the evidence." *Id.* at 256, 461 S.E.2d at 719. We continue to recognize the well-established rule that jurors may reject the existence of an uncontroverted statutory mitigating circumstance even after a peremptory instruction. *Id.* However, the case at bar is not controlled by that rule.

Unlike *Alston* where the *evidence* tended to show the existence of an uncontroverted statutory mitigating circumstance, in the case at bar, the State and defendant *stipulated* to the existence of the mitigating circumstance contained in N.C.G.S. § 15A-2000(f)(1). A stipulation entered into between the parties has the effect of removing a question of fact from the jury's consideration. Neither party need present evidence or show proof of the existence of such facts that are contained within the stipulation. In other words, "[t]he stipulation is substituted for proof and dispenses with the need for evidence." *State v. Mitchell*, 283 N.C. 462, 469, 196 S.E.2d 736 (1973). Because both parties stipulated to the existence of the statutory mitigating circumstance, whether defendant had a significant history of prior criminal activity was not a factual matter for the jury to determine. Thus, the trial court erred by failing to instruct the jury that the N.C.G.S § 15A-2000(f)(1) mitigating circumstance existed as a matter of law and must be given weight.

Once the existence of a statutory mitigating circumstance is established, the "jury may not refuse to give it weight or value" in its decision. *State v. Fullwood*, 323 N.C. 371, 396, 373 S.E.2d 518, 533 (1988) sentence vated on other grounds, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990); *see also State v. Kirkley*, 308 N.C. 196, 220-21, 302 S.E.2d 144, 157-58 (1983), *overruled on other grounds by State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988). Our legislature has determined as a matter of law that when statutory mitigating circumstances exist, they are deemed as a matter of law to have mitigating value. *Fullwood*, 323 N.C. at 396, 373 S.E.2d at 533; *State v. Wilson*, 322 N.C. 117, 144, 367 S.E.2d 589, 605 (1988); *see* N.C.G.S. § 15A-2000(f) (Supp. 1995). This Court has consistently held that if a statutory mitigating circumstance exists, the jury is not free to refuse to consider the circumstance and must give it some weight in its final sentencing determinations. However, the amount of weight any circumstance may be given is a matter left to the jury. *State v. Keel*, 337 N.C. 469, 447 S.E.2d 748 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 147 (1995); *see also State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990).

The result of the trial court's erroneous peremptory instruction was to allow the jury to answer "no" to the existence of the statutory (f)(1) mitigator and thus disregard the stipulation. As a matter of well-established law, the trial court's failure to give a *mandatory* peremptory instruction was therefore error.

Furthermore, we cannot state that had this statutory mitigating circumstance been weighed against the aggravating circumstance, the jury would still have returned a sentence of death. Therefore, we are unable to hold that the trial court's error permitting the jury to fail to find and weigh this mitigating circumstance was "harmless beyond a reasonable doubt." N.C.G.S. § 15A-1443(b) (1988). Accordingly, we vacate the death sentence in this case and remand it to the Superior Court, Forsyth County, for a new capital sentencing proceeding.

NO ERROR IN THE GUILT PHASE. DEATH SENTENCE VACATED AND REMANDED FOR A NEW CAPITAL SENTENCING PROCEEDING.