# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00248-COA

**DARIUS SANTWAIN JONES A/K/A DARIUS S.**
**JONES A/K/A DARIUS JONES, SR. A/K/A CRIP**
**CRAZY A/K/A DARIUS S. JONES, SR. A/K/A**
**DARIUS JONES**

APPELLANT

**v.**

**STATE OF MISSISSIPPI**

APPELLEE

DATE OF JUDGMENT:                02/09/2017
TRIAL JUDGE:                     HON. JUSTIN MILLER COBB
COURT FROM WHICH APPEALED:       LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                 BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: LAURA HOGAN TEDDER
DISTRICT ATTORNEY:               BILBO MITCHELL
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED: 04/24/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES AND TINDELL, JJ.**

**TINDELL, J., FOR THE COURT:**

¶1.     A Lauderdale County grand jury indicted Darius Jones on two felony counts. Count

I charged Jones with possession of methamphetamine while in possession of a firearm. *See*

Miss. Code Ann. §§ 41-29-139 (Supp. 2012) & 41-29-152 (Rev. 2013). Count II charged

possession of a firearm as a convicted felon. *See* Miss. Code Ann. § 97-37-5(1) (Rev. 2014).

A jury acquitted Jones of Count I but convicted him of Count II. The Lauderdale County

Circuit Court then sentenced Jones as a habitual offender to ten years in the custody of the

Mississippi Department of Corrections (MDOC) without eligibility for probation, parole, or early release and fined him $2,000.

¶2. On appeal from his conviction, Jones asserts the following issues: (1) there was insufficient evidence to support the verdict; (2) the verdict was against the overwhelming weight of the evidence; (3) his vehicle was illegally searched; and (4) the circuit court improperly instructed the jury on his stipulation that he was a convicted felon.

¶3. Finding no error, we affirm Jones's conviction and sentence.

## FACTS

¶4. Around 8:30 p.m. on October 9, 2013, Meridian Police officers responded to a call about a large crowd gathered at a local apartment complex. By the time Officer Dustin Allen arrived at the scene, other officers had already handcuffed several individuals, who were seated on a curb. Officer Allen observed about eight to twelve people still standing around a vehicle in front of the apartment complex. Officer Allen testified the area was a high-crime area and that the individuals were "just loitering around the vehicle, being loud [and] boisterous [and] causing a disturbance." To ensure everyone's safety, the police officers separated the individuals and engaged them in conversation.

¶5. Officer Allen began to speak to Jones, who was not handcuffed but was standing by his vehicle. While talking to Jones, Officer Allen noticed a large-caliber firearm on top of a backpack in the driver's seat of Jones's vehicle. Concerned with officer safety due to the large crowd still around the vehicle, Officer Allen testified that he asked Jones for permission to enter the vehicle and secure the weapon. Jones denied owning the gun or having any

2

knowledge of the gun's owner. Officer Allen testified, however, that Jones gave him the car keys and granted him permission to unlock the vehicle and secure the weapon. Officer Allen took the magazine out of the gun and unloaded a round from the chamber before securing the gun inside his own vehicle. According to Officer Allen, more than one bullet was inside the gun. At trial, the State entered the gun into evidence during Officer Allen's testimony. Officer Allen identified the weapon as a HiPoint .45-caliber semi-automatic handgun.

¶6. While retrieving the weapon, Officer Allen smelled an odor inside Jones's car. Based on his training and experience, Officer Allen identified the smell as marijuana. Officer Allen alerted Jones to the smell and asked for permission to further search the vehicle. Officer Allen testified that Jones consented to his request. Inside the backpack on the driver's seat, Officer Allen discovered a digital scale and two plastic sandwich bags that contained a crystal-like substance. Upon conducting a field test on the contents of one of the bags, Officer Allen determined the substance was methamphetamine.

¶7. After securing both the evidence and Jones, Officer Allen contacted Agent Christopher Peacock with the Mississippi Bureau of Narcotics. Following Jones's waiver of his rights, Agent Peacock and Officer Allen interviewed Jones about the items found in his car. Officer Allen testified that, although Jones had previously denied having any knowledge of the gun's owner, during the interview Jones claimed his mother owned the gun. Agent Peacock corroborated Officer Allen's testimony that Jones told them the gun belonged to his mother. Both law-enforcement officers further testified that Jones never suggested someone else had driven his car on the day of his arrest or that the backpack in the

3

driver's seat belonged to someone else.

¶8.     Jones's aunt, Carolyn Lewis, testified on behalf of the defense. Lewis stated that she received a phone call from Jones the evening of October 9, 2013. According to Lewis, she heard someone repeatedly ask Jones for permission to search his car, and she heard Jones repeatedly refuse to grant permission for the search. Lewis testified that she next heard the unknown person tell Jones to get up against the car, and then Jones asked what he had done wrong and why he was being handcuffed.

¶9.     The jury also heard testimony from Jones's former girlfriend, Sophia Tell. Tell testified that she and Jones were dating on October 9, 2013, although they no longer dated at the time of the trial. According to Tell, she borrowed Jones's car for most of the day on October 9, 2013, to run errands with her friend, her friend's boyfriend, and her friend's children. After finishing the errands, Tell returned to the apartment complex that evening. Tell stated that she saw no backpack as she locked the car. After returning the car keys to Jones, Tell testified that she visited a relative for about thirty minutes to an hour. As she left the relative's apartment, Tell noticed the commotion at the apartment complex and saw "a lot of people" standing near Jones's car.

¶10.    Tell testified that she owned the gun found in Jones's car. Contrary to Officer Allen's testimony that the gun was in plain view, Tell stated that she stored the gun out of sight underneath the driver's seat when she got into the car the morning of October 9, 2013. After leaving her relative's apartment that evening, Tell testified that she saw Jones, who was handcuffed and standing near his car, speaking to a police officer. According to Tell, she

4

heard the officer ask for permission to search the car, and then she heard Jones refuse consent. After Jones's refusal, Tell stated that the officer reached into Jones's pocket, retrieved the car keys, and unlocked the car.

¶11. Jones also testified about the events of October 9, 2013. Jones stated that Tell borrowed his car keys the morning of October 9, 2013, and then she returned the keys that evening. According to Jones, he remained inside most of the day and played a video game with his cousin. That evening, however, Jones testified that he and some friends were standing near his car when someone yelled, "The officer is around the corner." Jones stated that, as police officers began to arrive, someone ran by his car and threw a gun on the ground. Jones testified that police officers then began to handcuff and search people.

¶12. According to Jones's testimony, an officer approached him and claimed to smell marijuana. Jones stated that he told the officer he did not smoke and that he had no marijuana in his possession. In response to the officer's request to search him, Jones said that he consented. However, Jones testified that he refused the officer's request to search his car because he had not been in the car the entire day, and he had no idea what might be inside the car.

¶13. Jones testified that the officer placed him in handcuffs and seated him on the curb before proceeding to search his car without consent. According to Jones, the officer never mentioned seeing a gun but instead wanted to know what was inside a backpack on the back seat of Jones's car. Jones testified that, upon finding the scale and two bags of drugs inside the backpack, the officer searched the car again and found the gun underneath the car seat.

Although Jones testified that the gun belonged to Tell, he denied knowing the backpack's owner. Furthermore, Jones testified that he had no idea the gun, the backpack, or the backpack's contents were in his car. He further denied ever telling Officer Allen and Agent Peacock that the gun belonged to his mother.

¶14. After learning Jones was a convicted felon, the officers placed Jones into a patrol car. As the officers did so, Jones testified that they realized his phone was on an active call to his aunt. Jones stated that the officers took his phone and terminated the call. At the police station, Jones testified that he never gave a statement to Officer Allen and Agent Peacock and that Agent Peacock never asked him about a gun. Instead, Jones stated that Agent Peacock tried to get him to "set up somebody else on a bust charge[,]" and that, when Jones refused, Agent Peacock threatened to charge him "with everything."

¶15. After the defense rested, the State recalled Officer Allen as a rebuttal witness. During rebuttal, Officer Allen reiterated that, while talking to Jones on October 9, 2013, he observed a gun in plain sight in Jones's car. Prior to seeing the gun, Officer Allen testified that he had no reason to search Jones's car. Officer Allen further testified that he received Jones's permission before searching the car. After returning to the police station, Officer Allen stated that he and Agent Peacock interviewed Jones. Officer Allen testified that Jones gave a statement during the interview, and he denied that either he or Agent Peacock threatened Jones or made promises to induce Jones to waive his rights.

¶16. The jury acquitted Jones of Count I, possession of methamphetamine while in possession of a firearm, but found him guilty of Count II, possession of a firearm as a

6

convicted felon. The circuit court sentenced Jones as a habitual offender to ten years in MDOC's custody without eligibility for probation, parole, or early release and fined him $2,000. Jones filed an unsuccessful motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. Aggrieved, Jones appeals.

**DISCUSSION**

## I.     Sufficiency of the Evidence

¶17.    Jones contends insufficient evidence supported his conviction for possession of a firearm as a convicted felon. When reviewing a challenge to the legal sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Where the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable jurors could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is to reverse and render. However, if reasonable fair-minded jurors in the exercise of impartial judgment might reach different conclusions on every element of the offense, the evidence will be deemed to have been sufficient.

*Topps v. State*, 227 So. 3d 1177, 1180 (¶5) (Miss. Ct. App. 2017) (internal citations and quotation marks omitted).

¶18.    As discussed, Count II of Jones's indictment charged him with being a convicted felon in possession of a firearm in violation of section 97-37-5(1). The State was required to prove that, on the date charged in the indictment, Jones (1) possessed a firearm and (2) had been previously convicted of a felony. *See Rogers v. State*, 130 So. 3d 544, 548 (¶18) (Miss. Ct. App. 2013). Because Jones lacked actual possession of the gun found in his car, the State

7

pursued a conviction under the theory of constructive possession. To meet its evidentiary burden, the State had to present "sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular [item] and was intentionally and consciously in possession of it." *Glidden v. State*, 74 So. 3d 353, 355 (¶5) (Miss. Ct. App. 2010) (citation omitted). Proximity alone, without the presence of other incriminating circumstances, is insufficient to establish constructive possession. *Id.* Instead, the State had to show that Jones had dominion over or control of the gun. *Id.*

¶19. Mississippi caselaw gives the jury the responsibility of resolving questions of conflicting evidence and witness credibility. *Topps*, 227 So. 3d at 1181 (¶13). After hearing the testimony in the present case, the jury clearly resolved any such conflicts in favor of the State. The trial testimony reflected no dispute as to the following facts: (1) while at the apartment complex, Officer Allen discovered a gun inside a vehicle; (2) Jones owned the car in which the gun was found; (3) Jones was standing in the vicinity of his car when Officer Allen approached him; (4) Jones's car was locked when Officer Allen arrived; (5) Jones had the keys to the locked car in his possession; and (6) Jones was a convicted felon.

¶20. Officer Allen testified that, while talking to Jones beside Jones's car, he observed a gun in plain sight. Officer Allen stated the gun was clearly visible on top of a backpack in the driver's seat, and Jones had sole possession of the keys to the locked car. According to Officer Allen, Jones claimed at the scene that he neither owned the gun nor knew to whom the gun belonged. However, Officer Allen testified that, during a subsequent interview with Agent Peacock and Officer Allen, Jones alleged the gun belonged to his mother. Agent

8

Peacock corroborated Officer Allen's testimony that Jones told them his mother owned the gun. Both law-enforcement officers further testified that Jones never asserted during the interview that Tell or anyone else had driven his car that day.

¶21. Reviewing the evidence in the light most favorable to the State, we conclude that reasonable fair-minded jurors could have found the State proved the essential elements of constructive possession beyond a reasonable doubt. *See Topps*, 227 So. 3d at 1180 (¶5). Because a rational trier of fact could have concluded that Jones exercised dominion or control over the gun found in his nearby locked car, we find sufficient evidence supported the verdict. We therefore find no merit to this assignment of error.

## II. Weight of the Evidence

¶22. Jones also asserts that the verdict was against the overwhelming weight of the evidence. When reviewing a challenge to the weight of the evidence, this Court disturbs the verdict only if "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Roberts v. State*, 229 So. 3d 1060, 1068 (¶29) (Miss. Ct. App. 2017). Furthermore, we review the evidence in the light most favorable to the verdict. *Id.*

¶23. Through Officer Allen's testimony, the State presented evidence that Jones, a convicted felon, was standing next to his car when Officer Allen approached and observed a gun in plain sight on the driver's seat. Officer Allen's testimony further reflected that the car was locked and that Jones had the keys to the car in his possession. Although the defense presented a different version of events, as previously discussed, the jury resolves any issues

of witness credibility and conflicting testimony. *See Topps*, 227 So. 3d at 1181 (¶13) ("Conflicting testimony does not evince overwhelming evidence; where the verdict turns on the credibility of conflicting testimony and the credibility of the witnesses, it is the jury's duty to resolve the conflict." (quoting *Brown v. State*, 995 So. 2d 698, 702 (¶13) (Miss. 2008))).

¶24. After reviewing the evidence in the light most favorable to the verdict, we cannot say that allowing the verdict to stand would sanction an unconscionable injustice. As a result, we find this issue lacks merit.

### III. Illegal Search

¶25. Jones next argues that Officer Allen illegally searched his car and seized the gun found inside the car. According to Jones, he never consented to the search, and Officer Allen lacked probable cause or reasonable suspicion to conduct the search. This Court reviews de novo the trial court's determinations of reasonable suspicion and probable cause. *Gillett v. State*, 56 So. 3d 469, 482 (¶21) (Miss. 2010). However, our "de novo review is limited to the trial court's decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards." *May v. State*, 222 So. 3d 1074, 1078 (¶6) (Miss. Ct. App. 2016) (internal quotation marks omitted).

¶26. As the *May* court explained:

> The Fourth Amendment of the United States Constitution and Article 3, Section 23 of the Mississippi Constitution guarantee a person's right to be free from unreasonable searches and seizures. As a general rule, our state and federal Constitutions prohibit searches without a valid warrant unless an exception applies. The State bears the burden to show that a warrantless search falls under one of the permissible exceptions. If no exception is found,

10

the evidence seized as a result of the search should be suppressed as fruit of the poisonous tree. A search is not unreasonable when it is based on probable cause.

One exception to the warrant requirement is consent. Also excepted from the warrant requirement are items within a police officer's plain view or plain feel.

. . . .

To provide an exception to the warrant requirement, a person's consent to search must be knowing and voluntary. For consent to be given knowingly, the person searched must be aware he has the legal right to refuse. Voluntariness is determined from the totality of the circumstances. Factors to consider are[:]

> [W]hether the circumstances were coercive, occurred while in the custody of law enforcement or occurred in the course of a station[-]house investigation. The court must also look to the individual's maturity, impressionability, experience[,] and education. Further, the court should consider whether the person was excited, under the influence of drugs or alcohol, or mentally incompetent. If the consent occurred while the defendant was being generally cooperative, the consent is more likely to be voluntary . . . .

*Id.* at 1078-79 (¶¶7-9) (internal citations and quotation marks omitted). "[T]he trial judge . . . is best able to adjudge the credibility of those testifying[, and w]hen the testimony on the issue is conflicting, as indeed it usually is, the trial court is the principal evaluator of credibility." *Milliorn v. State*, 755 So. 2d 1217, 1221 (¶13) (Miss. Ct. App. 1999) (citation omitted).

¶27. Based on the totality of the circumstances, we find substantial credible evidence supports the circuit court's determination that Jones knowingly and voluntarily consented to Officer Allen's request to unlock the car and retrieve the gun. Officer Allen testified that,

11

by the time he arrived at the apartment complex the evening of October 9, 2013, other officers had arrived and handcuffed several individuals, who were seated on a curb. However, Officer Allen testified that about eight to twelve people who were not handcuffed were still standing around a vehicle. According to Officer Allen, the area was a high-crime area, and these individuals were being loud and boisterous and creating a disturbance. Still concerned with everyone's safety, the officers separated these remaining individuals and began to talk to them. While speaking to Jones next to Jones's car, Officer Allen testified he observed a large-caliber handgun in plain sight on the driver's seat. Because he remained concerned about officer safety, Officer Allen asked Jones for permission to enter the car and secure the gun.

¶28. Officer Allen's testimony reflected that Jones was generally cooperative with his request to retrieve the gun. Officer Allen stated that Jones, who was not handcuffed during their exchange, voluntarily offered his car keys so that Officer Allen could enter the locked car. The record also reflected no evidence that Jones was in any way impaired at the time of the conversation, and Jones raises no such argument on appeal. In fact, both Officer Allen and Agent Peacock testified that Jones specifically told them a medical condition prevented him from consuming alcohol or drugs. Furthermore, as the circuit court noted in its bench ruling, Jones possessed experience and familiarity with the criminal-justice system due to his prior felony conviction.

¶29. Because substantial credible evidence supports the circuit court's determination that Jones consented to Officer Allen's search, we find this assignment of error lacks merit.

## IV. Jury Instruction

¶30. Jones asserts the circuit court improperly instructed the jury regarding his stipulation that he had a prior felony conviction. At trial, without any objection from the defense, the State asked the circuit court to give the stipulation to the jury after opening statements. Thus, following opening statements, the circuit court instructed the jury that Jones "does stipulate that he has at least one prior felony conviction prior to the date of October the 9th, 2013."

¶31. During the jury-instruction conference, the State submitted proposed instruction S-8A. As amended, the jury instruction read:

> The [c]ourt instructs the [j]ury that the State and the Defendant have agreed and stipulated that the [D]efendant had at least one valid felony conviction prior to the date of the charged offense in this case; therefore, you shall consider that fact to have been proven beyond a reasonable doubt as to Count II[, possession of a firearm by a convicted felon].

Objecting to the proposed instruction, Jones's attorney argued that he had stipulated to the existence of a fact but had never agreed to relieve the State of its burden to prove an element of the crime beyond a reasonable doubt. After considering the parties' arguments, the circuit court found the defense had clearly stipulated to Jones's prior felony conviction as part of its trial strategy. The circuit court therefore granted proposed jury instruction S-8A.

### a. Peremptory Instruction

¶32. On appeal, Jones renews his trial objection that instruction S-8A amounted to a peremptory jury instruction and improperly shifted the State's burden of proof on an essential element of the crime. As a result, Jones asks this Court to reverse his conviction.

¶33. In *Rogers*, the grand jury indicted R.L. Rogers for armed robbery and possession of

a firearm as a convicted felon. *Rogers*, 130 So. 3d at 546 (¶6). To avoid any prejudicial effect from the jury learning that Rogers was a convicted felon, the defense stipulated that Rogers had a prior felony conviction. *Id.* The parties agreed that, rather than announcing the stipulation to the jury prior to or during the trial, the stipulation would appear in one of the defense's proposed jury instructions. *Id.* at 547 (¶11). Following his conviction, Rogers appealed and asserted for the first time that the State never proved he possessed a prior felony conviction. *Id.* at (¶14).

¶34. In addressing the impact of the parties' stipulation on Rogers's prior criminal history, this Court explained:

> "[A] stipulation entered into between the parties has the effect of removing a question of fact from the jury's consideration. Neither party need present evidence or show proof of the existence of such facts that are contained within the stipulation." [*State v. Flippen*, 477 S.E.2d 158, 165 (1996).] "In other words, the stipulation is substituted for proof, and it dispenses with the need for evidence." *Id.* Similarly, the Mississippi Supreme Court has held that the effect of a stipulation to an element of a crime is that the element is conclusively established without the State having to submit further proof to the fact-finder.

*Rogers*, 130 So. 3d at 550 (¶22).

¶35. As in *Rogers*, the State and defense explicitly stipulated that Jones possessed a prior felony conviction. Furthermore, the parties agreed to have the circuit court announce the stipulation to the jury, which occurred after opening statements. By agreeing to the stipulation, Jones "conceded that the prosecution did not have to prove that he had previously been convicted of a felony. In return, [Jones] avoided the possible prejudicial effect of the jury's awareness of his specific prior bad acts . . . that the prosecution intended to introduce."

14

*Id.* at 551 (¶24).  Accordingly, we find no merit to Jones's argument that instruction S-8A improperly relieved the State of proving every element of the crime charged beyond a reasonable doubt.

### b.     Limiting Instruction

¶36.    At trial, neither party requested a limiting instruction for proposed instruction S-8A, and the circuit court did not give one sua sponte.  On appeal, however, Jones contends for the first time that the circuit court erred by giving instruction S-8A without any accompanying language to limit "the jurors' use of the stipulation."

¶37.    The supreme court has previously stated:

> Where evidence of a prior conviction is a necessary element of the crime for which the defendant is on trial (i.e., possession of firearm by a convicted felon), but evidence of the specific nature of the crime for which the defendant was previously convicted (i.e., armed robbery), is not an essential element of the crime for which the defendant is on trial, as it is in DUI cases, the trial court should accept a defendant's offer to stipulate and grant a limiting instruction.

*Williams v. State*, 991 So. 2d 593, 605-06 (¶40) (Miss. 2008).

¶38.    Count II of Jones's indictment charged him with possession of a firearm as a convicted felon, a crime that requires no specific evidence of the nature of the prior felony. *See id.*; *Timms v. State*, 54 So. 3d 310, 316 (¶18) (Miss. Ct. App. 2011).  In its appellate brief, the State admits that trial courts should generally give a limiting instruction in cases such as this one.  *See Williams*, 991 So. 2d at 605-06 (¶40).  However, the State further argues that the circuit court's failure to do so here amounted to harmless error.

¶39.    Although the defense objected to instruction S-8A during the jury-instruction

15

conference, it never requested the limiting instruction Jones now argues he should have received. *See Harper v. State*, 478 So. 2d 1017, 1025 (Miss. 1985) ("[T]he lower court may not be put in error for failure to instruct the jury on any point of law unless specifically requested in writing to do so." (citing *Newell v. State*, 308 So. 2d 71, 78 (Miss. 1975))). Even assuming the circuit court erred by not giving a limiting instruction sua sponte, we find any such error to be harmless.

¶40. Mississippi caselaw recognizes that, in many instances, a defendant may not want a limiting instruction because the instruction "may actually 'focus the jury's attention' on . . . potentially prejudicial testimony [or evidence]." *Curry v. State*, 202 So. 3d 294, 299 (¶16) (Miss. Ct. App. 2016) (quoting *Tate v. State*, 912 So. 2d 919, 928 (¶28) (Miss. 2005)). "Jury instructions that reference prior arrests and convictions may be counterproductive to the defendant. While serving to limit the jury's consideration of the prior wrongs, such instructions also remind and emphasize to the jury that the defendant committed prior bad acts." *Tate*, 912 So. 2d at 928 (¶28).

¶41. Based upon a review of relevant caselaw, we cannot say that the absence of a limiting instruction in this case rendered Jones's trial fundamentally unfair.[1] *Cf. Robinson v. State*, 940 So. 2d 235, 239 (¶11) (Miss. 2006) (finding the denial of a limiting instruction to be harmless error unless the decision deprives the defendant of a fair trial); *Curry*, 202 So. 3d at 299 (¶16) (finding no reversible error from the trial court's failure to give a limiting

---

[1] As the record reflects, the lack of a limiting instruction amounts to nothing more than harmless error since the jury considered Jones's stipulation regarding his prior felony conviction but still acquitted him of Count I.

instruction sua sponte). As a result, we find this assignment of error lacks merit.

### c. Ineffective Assistance of Counsel

¶42. Alternatively, Jones asserts his trial attorney rendered ineffective assistance by failing to request a limiting instruction. To prove ineffective assistance, Jones must show (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Jones fails to satisfy this test.

¶43. "We presume that counsel's decision not to request a limiting instruction was within the ambit of trial strategy. This presumption is appropriate given that . . . such an instruction has the potential to do the defendant more harm than good." *Curry*, 202 So. 3d at 301 (¶24) (internal citation omitted). Furthermore, as previously discussed, we find the lack of a limiting instruction in this case failed to deprive Jones of a fair trial. We therefore find this argument lacks merit.

### CONCLUSION

¶44. Finding no error, we affirm Jones's conviction and sentence.

¶45. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**

17