STATE OF NORTH CAROLINA v. RUSSELL HOLDEN, JR.

No. 460A91-2

(Filed 24 July 1997)

**1. Evidence and Witnesses § 1694 (NCI4th)— capital sentencing—photographs of victim at scene—admissible**

The trial court did not abuse its discretion in a capital resentencing hearing by admitting into evidence three photographs of the victim's body where the photographs were admitted to illustrate testimony describing the appearance of the victim's body when it was found.

**Am Jur 2d, Evidence §§ 327, 963; Homicide §§ 417, 419.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

**2. Criminal Law § 1342 (NCI4th Rev.)— capital resentencing—four prior unadjudicated sexual assaults—admissible**

The trial court did not abuse its discretion during a capital resentencing proceeding by admitting testimony relating to four prior unadjudicated sexual assaults where the evidence was rele-

STATE v. HOLDEN

[346 N.C. 404 (1997)]

vant to establishing the aggravating circumstance that the murder was committed while defendant was engaged in an attempt to commit rape. The circumstances of the four prior unadjudicated assaults were virtually identical to the circumstances surrounding the attempted rape of the victim here.

**Am Jur 2d, Criminal Law § 598; Evidence §§ 408, 421, 450; Rape § 71.**

**Remoteness in time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offense. 88 ALR3d 8.**

**Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.**

3. **Criminal Law § 1335 (NCI4th Rev.)— capital resentencing—evidence of aggravating circumstance—defendant's offer to stipulate—evidence admissible**

Evidence of prior sexual assaults was admissible in a capital resentencing in support of the aggravating circumstance that the murder was committed while defendant was engaged in an attempt to commit rape even though defendant offered to stipulate to intent. Defendant's offer to stipulate to intent did not preclude the State from introducing evidence which tended to establish defendant's intent to rape the victim.

**Am Jur 2d, Criminal Law §§ 598, 599, 628; Homicide §§ 72, 442.**

**Remoteness in time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offense. 88 ALR3d 8.**

**Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

4. **Criminal Law § 1335 (NCI4th Rev.)— capital resentencing—aggravating circumstance—murder committed while engaged in other crime—conviction for other crime in guilt phase—evidence admissible in sentencing phase**

Evidence of defendant's prior sexual misconduct was admissible in a capital resentencing in support of the aggravating circumstance that the murder was committed while defendant was engaged in an attempt to commit rape even though defendant argued that the evidence was inadmissible because he had been found guilty of attempted rape. The evidence presented during the guilt-innocence phase of defendant's first trial was not before this resentencing jury and the State was required to resubmit the evidence from the original trial to have it considered. Furthermore, the State was entitled to present additional competent evidence that tended to show that defendant attempted to rape the victim. N.C.G.S. § 15A-2000(a)(3).

**Am Jur 2d, Criminal Law § 527; Evidence §§ 328, 421; Rape §§ 73, 75.**

**Remoteness in time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offense. 88 ALR3d 8.**

**Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.**

5. **Criminal Law § 1336 (NCI4th Rev.)— capital resentencing—physical evidence—admission not prejudicial**

There was no prejudice in a capital resentencing hearing in the admission of a pocketknife, a fillet knife, and a pair of scissors where the evidence at trial tended to show that the victim suffered a cut in her neck which officers initially believed was the cause of death and that the items were seized the next day from defendant's residence and the car he had been driving. Assuming error, the evidence tended to show that defendant shot the victim and caused her death and forensic evidence linked cartridges from the scene to defendant's handgun. Defendant cannot show a reasonable possibility that a different outcome would have been reached had the knives and scissors not been admitted. N.C.G.S. § 15A-1443(a).

**Am Jur 2d, Appellate Review §§ 713, 753; Criminal Law § 598; Homicide §§ 273, 554.**

STATE v. HOLDEN

[346 N.C. 404 (1997)]

**Prejudicial effect of prosecuting attorney's misconduct in physically exhibiting to jury objects or items not introduced as evidence. 46 ALR2 1423.**

6. **Criminal Law § 1345 (NCI4th Rev.)— capital resentencing—instructions—necessity for jury to keep open mind**

There was no error in a capital resentencing hearing where the trial court instructed the jury that it must not have any preconceived ideas as to whether defendant should receive life or death and that a juror's mind must not be closed on either of those propositions. The court's statement properly informed the jury that it should not decide the case until after it had heard the evidence presented at trial and the court did not state that a juror's feelings about a life sentence or the death penalty, standing alone, could render the juror unqualified to serve.

**Am Jur 2d, Trial §§ 1120-1175.**

7. **Criminal Law § 372 (NCI4th Rev.)— capital resentencing—judge's comment—role of jury**

There was no error in a capital resentencing hearing entitling defendant to a new sentencing hearing where, out of the presence of the jury and after granting defendant's pretrial motion to preclude the district attorney and any witness from mentioning that defendant had been previously sentenced to death, the court expressed its opinion that juries should not be permitted to sentence capital defendants. The court did not express any opinion on the merits of the case, did not make any comment expressing contempt for defendant or defendant's counsel, and the comments were not in the presence of the jury.

**Am Jur 2d, Criminal Law §§ 295, 483, 919; Judges § 170; New Trial § 150; Trial §§ 284, 288, 289.**

**Indoctrination by court of persons summoned for jury service as prejudicial error. 89 ALR2d 197.**

**Pretrial comments indicating fixed view as to proper punishment for particular type of crime as basis for judge's disqualification under 28 USCS § 144. 29 ALR Fed. 588.**

**8. Criminal Law § 402 (NCI4th Rev.)— capital resentencing— court's introductory comments to prospective jurors— Simpson trial**

There was no error in a capital resentencing proceeding where the court told prospective jurors that the O.J. Simpson murder trial was not the way court should be run, that the media would not be in the courtroom because that was how Judge Ito "lost his hammer," and that capital sentencing required a lot of study and ought not to be assigned to laymen. The court's opinions with respect to how the Simpson trial was conducted and whether lay juries should make the capital sentencing decision were extraneous but were made in the context of admonishing the jury that both the State and defendant were entitled to a fair trial and of charging the jury not to read, watch, or listen to any media accounts relating to the case. Nothing in the court's comments constituted an expression of opinion on any fact to be decided by the jury in the present case and did not denigrate defendant or defendant's trial counsel.

**Am Jur 2d, Criminal Law §§ 295, 483, 919; Judges § 170; New Trial § 150; Trial §§ 284, 288, 289.**

**Indoctrination by court of persons summoned for jury service as prejudicial error. 89 ALR2d 197.**

**Pretrial comments indicating fixed view as to proper punishment for particular type of crime as basis for judge's disqualification under 28 USCS § 144. 29 ALR Fed. 588.**

**9. Criminal Law § 402 (NCI4th Rev.)— capital resentencing— court's introductory comments to jurors**

There was no error in a capital resentencing proceeding where the court, in comments after swearing in the venire members, stated that jurors did not know much about the court system, that jurors did not know much about the trial court specifically or their elected officials in general, that the Oklahoma bombing was a terrible thing, that "[s]omething is bad wrong and it's us," and gave a lengthy discourse expressing its disdain for the use of the term "African-American." These comments did not include an opinion on any fact to be decided by the jury and did not disparage defendant or defendant's counsel.

**Am Jur 2d, Criminal Law §§ 295, 483, 919; Judges § 170; New Trial § 150; Trial §§ 284, 288, 289.**

Indoctrination by court of persons summoned for jury service as prejudicial error. 89 ALR2d 197.

Pretrial comments indicating fixed view as to proper punishment for particular type of crime as basis for judge's disqualification under 28 USCS § 144. 29 ALR Fed. 588.

10. **Jury § 146 (NCI4th)— capital sentencing—court's statement to venire—not an expression of opinion**

There was no error in a capital sentencing proceeding where the court made a statement to the venire which defendant contended expressed the court's disdain for a life sentence but which was part of a more lengthy discourse apparently in response to a prospective juror having attempted to speak with a court reporter during the lunch recess. The import of the entire statement was to assure jurors that all of the information they needed would be given to them in the courtroom and to inform them of their responsibility; the court did not express a disdain for a life sentence.

Am Jur 2d, Trial § 1633.

Pretrial comments indicating fixed view as to proper punishment for particular type of crime as basis for judge's disqualification under 28 USCS § 144. 29 ALR Fed. 588.

11. **Evidence and Witnesses § 125 (NCI4th)— capital resentencing—sexual behavior of victim—not admissible**

In a capital resentencing for a first-degree murder where defendant had also been convicted of rape, the trial court did not err by excluding evidence that the victim had engaged in sexual intercourse with a third party on the night of the killing. The evidence did not relate to any aspect of defendant's character, his record, or any other circumstance which a jury could deem to have mitigating value. There was no evidence that defendant was aware that the victim had engaged in sexual intercourse on the night in question and, even considering defendant's limited intellectual capacity, the evidence did not shed any light on whether defendant believed that the victim had consented to having sexual intercourse with him or on his capacity to appreciate the criminality of his conduct.

Am Jur 2d, Criminal Law §§ 598, 599; Evidence § 504; Rape § 86.

STATE v. HOLDEN

[346 N.C. 404 (1997)]

**Constitutionality of rape shield statute restricting use of evidence of victim's sexual experiences. 1 ALR4th 283.**

12. **Criminal Law § 690 (NCI4th)— capital resentencing—mitigating circumstances—directed verdict—peremptory instruction—not given**

The trial court did not err in a capital resentencing by refusing to grant defendant's motions for a directed verdict on three statutory mitigating circumstances. A peremptory instruction rather than a directed verdict is the appropriate device for submitting to the jury uncontradicted evidence supporting a mitigating circumstance, but even where all of the evidence supports finding a mitigating circumstance and a peremptory instruction is given, the jury may reject the evidence and not find that fact if it does not believe the evidence. Although there was an exception in *State v. Flippen*, 344 N.C. 689, entitling a defendant to a mandatory peremptory instruction where the State and defendant had stipulated to a mitigating circumstance, the mitigating circumstances at issue here were not established by stipulation.

**Am Jur 2d, Trial §§ 841, 865, 1883.**

**Propriety and prejudicial effect of counsel's argument or comment as to trial judge's refusal to direct verdict against him. 10 ALR 3d 1330.**

13. **Jury § 99 (NCI4th)— capital resentencing—reopening voir dire—peremptory challenge—no error**

The trial court did not abuse its discretion in a capital resentencing hearing by reopening *voir dire* after the jury was impaneled and permitting the State to exercise a peremptory challenge where the prosecutor informed the court after the close of all the evidence that he had learned from "an officer of the court" that a juror had in the last few years presented an argument against the death penalty; the juror was brought into the courtroom for questioning and stated that she currently believed that some people should receive the death penalty, that she had never stated that the death penalty was not being fairly administered or that the death penalty should not be imposed, and that her responses on *voir dire* were correct; and the trial court declined to excuse the juror for cause but the prosecutor exercised one of his remaining

peremptory challenges. The information provided by the prosecutor established good reason to reopen *voir dire* to inquire into whether the juror made the statements attributed to her, whether she continued to hold these beliefs and whether her beliefs would prevent or substantially impair the performance of her duties as a juror.

**Am Jur 2d, Jury § 243.**

**Comment note on beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**14. Criminal Law § 461 (NCI4th Rev.)— capital resentencing— prosecutor's argument—comfortable life in prison**

The trial court did not err in a capital resentencing by allowing the prosecutor to comment, over defendant's objection, on the quality of life defendant would have in prison where a prison guard had testified that defendant was permitted to watch television, play cards, lift weights, play basketball, go to the music room, and eat lunch with other inmates. It was reasonable to infer that defendant would continue to enjoy these privileges if sentenced to life imprisonment.

**Am Jur 2d, Criminal Law §§ 291, 917; Homicide §§ 463, 464; Trial §§ 496, 582.**

**15. Criminal Law § 460 (NCI4th Rev.)— capital resentencing— prosecutor's argument—mitigating circumstances—no error**

The trial court did not err in a capital resentencing hearing by overruling defendant's objection to an argument which defendant contended improperly told jurors that circumstances not sufficient to excuse the killing or to reduce it to a lesser included offense did not have mitigating value. The prosecutor did not state that mitigating circumstances were limited to facts which would justify the killing or to facts which would be sufficient to reduce the crime to a lesser included offense of murder, the argument that the victim did not provoke the killing was supported by the evidence, and the prosecutor was entitled to argue that no mitigating circumstances existed.

**Am Jur 2d, Criminal Law § 917; Homicide §§ 463, 464; Trial §§ 496, 568.**

STATE v. HOLDEN

[346 N.C. 404 (1997)]

16. Criminal Law § 440 (NCI4th Rev.)— capital resentencing— prosecutor's argument—prior rapes by defendant

There was no gross error requiring the trial court to intervene *ex mero motu* in a capital resentencing where defendant contended that the prosecutor made improper use of defendant's prior unadjudicated sexual assaults where the prosecutor briefly mentioned testimony relating to the prior assaults, commented that it is unfortunate that all rapes are not reported, reminded the jury that defendant had been convicted of attempted rape and noted that this conviction was possible only because the victim had reported defendant's actions to the police, and argued that defendant had learned a lesson and decided to kill his next victim to prevent her from testifying against him. The prosecutor's argument was supported by the evidence presented in the sentencing proceeding.

Am Jur 2d, Criminal Law § 917; Evidence § 421; Homicide §§ 463, 464; Trial § 496.

Remoteness in time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offense. 88 ALR3d 8.

Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.

17. Criminal Law § 460 (NCI4th Rev.)— capital resentencing— prosecutor's argument—prior unadjudicated rapes

There was no gross error requiring intervention *ex mero motu* in a capital resentencing where the prosecutor related the facts of four prior unadjudicated sexual assaults after telling the jury , "We have to prove his intent at the time he killed [the victim] was to commit rape . . . ." The prosecutor was entitled to argue that these facts supported the conclusion that defendant intended to rape the victim and that the jury should find the aggravating circumstance that the murder was committed while in the attempt to commit a rape, and the argument was consistent with the limiting instruction given by the trial court.

Am Jur 2d, Criminal Law § 917; Evidence § 421; Homicide §§ 463, 464; Trial § 496.

STATE v. HOLDEN

[346 N.C. 404 (1997)]

Remoteness in time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offense. 88 ALR3d 8.

Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.

18. **Criminal Law § 460 (NCI4th Rev.)— capital resentencing— prosecutor's argument—prior sexual assaults**

The trial court was not required to intervene *ex mero motu* in a capital resentencing hearing where the prosecutor argued that defendant being good to the elderly did not allow him to do what he had done to "all these" women. In context, the prosecutor was arguing that the mitigating circumstances did not have great weight, did not outweigh the aggravating circumstances, and that the jury should recommend death.

**Am Jur 2d, Criminal Law §§ 598, 599, 917; Homicide §§ 463, 464; Trial § 496.**

19. **Criminal Law § 473 (NCI4th Rev.)— capital resentencing—prosecutor's argument—life not sacred to defense attorneys**

There was no gross impropriety requiring intervention *ex mero motu* in a capital resentencing where the prosecutor argued that life was not sacred to defendant and his attorneys. The argument was improper but not abusive, vituperative, or opprobrious, and the prosecutor did not repeatedly attempt to diminish defense counsel before the jury. The prosecutor also stated that defendant had two fine attorneys who had done an excellent job; a careful review of the argument permits the inference that the improper reference to defense counsel was not intended.

**Am Jur 2d, Appellate Review § 713; Criminal Law § 917; Homicide §§ 463, 464; Trial § 496.**

20. **Criminal Law § 460 (NCI4th Rev.)— capital resentencing— prosecutor's argument—Biblical passage**

The trial court did not abuse its discretion by not intervening *ex mero motu* in a capital resentencing where the prosecutor argued that the Biblical injunction prohibited murder and quoted the New Testament in what defendant contends was an argument that Jesus would have hung a millstone around defendant's neck

and drowned him in the depths of the sea for harming this victim. This argument did not suggest that the law enforcement powers of the state are divinely inspired or ordained and did not suggest that the death penalty is divinely required. The prosecutor anticipated that defense counsel would refer to the Bible in arguing against a death penalty recommendation and attempted to counter any such attempt.

**Am Jur 2d, Appellate Review § 713; Criminal law § 917; Homicide §§ 463, 464; Trial 572.**

**Prosecutor's appeal in criminal case to racial, national, or religious prejudice as ground for mistrial, new trial, reversal, or vacation of sentence—modern cases. 70 ALR4th 664.**

21. **Criminal Law § 1364 (NCI4th Rev.)— capital resentencing—instructions—previous felony involving violence—no plain error**

There was no plain error in a capital resentencing proceeding where the court omitted "or threat" from its instruction on the aggravating circumstance of a previous felony involving violence or the threat of violence where defendant had a prior conviction for attempted second-degree rape. Although it has been held that such a conviction requires submission of this circumstance, it has not been held that attempted second-degree rape is always a crime involving the use of violence. There was error because the State did not present any evidence in support of the circumstance other than the judgment and commitment, but attempted second degree rape standing alone is sufficient to establish the existence of the circumstance and the error did not reduce the State's burden of proof or favor the State in any way, and there is no reasonable probability that the jury would have reached a different result had the words "or threat" been included in the instruction. N.C.G.S. § 15A-2000(e)(3).

**Am Jur 2d, Criminal Law § 918; Homicide § 553.**

22. **Criminal Law § 1378 (NCI4th Rev.)— capital resentencing—mitigating circumstances—peremptory instructions—credible and convincing**

There was no error in a capital resentencing where the defendant contended that the trial court's peremptory instructions on the mitigating circumstances of emotional disturbance

STATE v. HOLDEN

[346 N.C. 404 (1997)]

and impaired capacity heightened his burden of proof by requiring the jury to find the uncontradicted evidence to be credible and convincing. In the context of the entire charge, the jury would have applied the credible and convincing requirement to mean that it must believe the evidence to find that the mitigating circumstances existed and that it could reject the circumstances if it did not find the evidence to be credible and convincing. Although not a model of clarity, the court's instructions did not place a more stringent burden of proof on defendant.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 115, 516; Trial § 841.**

**Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

23. **Constitutional Law § 370 (NCI4th)— death sentence— defendant mentally retarded—organic brain damage**

There was no state or federal constitutional violation in sentencing to death a mentally retarded defendant with organic brain damage where defendant was permitted to present evidence of his mental retardation and organic brain damage and the trial court submitted nonstatutory mitigating circumstances permitting the jury to consider whether defendant was retarded, whether he was suffering from organic brain damage, and whether either of these circumstances had mitigating value.

**Am Jur 2d, Criminal Law §§ 40, 628.**

**Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

**Adequacy of defense counsel's representation of criminal client regarding incompetency, insanity, and related issues. 17 ALR4th 575.**

24. **Criminal Law § 1402 (NCI4th Rev.)— death sentence— proportionate**

A sentence of death was proportionate where the evidence supported the aggravating circumstances, the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor, and this case was not substantially similar to any of the cases in which death was found disproportionate. A death sentence has never been found disproportionate in a first-degree murder case where the victim was sexually assaulted or where

the murder was committed for the purpose of eliminating a witness. The evidence here strongly tended to show that defendant coldly and callously planned to rape and kill the victim and that he killed her to prevent her from testifying against him.

**Am Jur 2d, Criminal Law §§ 527, 628; Homicide §§ 46, 464, 555, 556; Trial §§ 572, 841, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed to avoid arrest or prosecution, to enforcement of law, and the like—post-*Gregg* cases. 64 ALR4th 755.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Stevens (Henry L., III), J., at the 24 April 1995 Criminal Session of Superior Court, Duplin County, upon a prior jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 13 November 1996.

*Michael F. Easley, Attorney General, by Jill Ledford Cheek, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Marshall Dayan, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant was indicted on 1 July 1985 for one count of murder and one count of first-degree rape. In August 1985 he was tried capitally and found guilty of first-degree murder and attempted rape. The conviction for first-degree murder was based on both premeditation and deliberation and felony-murder. He was sentenced to death for the murder and to twenty years' imprisonment for the attempted rape. We found no error in the trial and sentences in *State v. Holden*, 321 N.C. 125, 362 S.E.2d 513 (1987) (*Holden I*), cert. denied, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988).

STATE v. HOLDEN

[346 N.C. 404 (1997)]

In 1989 defendant filed a motion for appropriate relief in the Superior Court, Duplin County. In December 1990 the court granted partial relief by vacating defendant's death sentence and ordering a new capital sentencing proceeding based on the opinion of the Supreme Court of the United States in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). Following the second capital sentencing proceeding, the jury recommended a sentence of death; and the trial court entered judgment in accordance with that recommendation. In *State v. Holden*, 338 N.C. 394, 450 S.E.2d 878 (1994) (*Holden II*), we found error in defendant's second capital sentencing proceeding.

Following the third capital sentencing proceeding, which is the subject of this appeal, the jury recommended a sentence of death; and the trial court entered judgment accordingly. For the reasons discussed herein, we conclude that defendant's third capital sentencing proceeding was free from prejudicial error and uphold his sentence of death.

The evidence presented during defendant's original trial is summarized in *Holden I*, 321 N.C. at 131-32, 362 S.E.2d at 519-20. The evidence presented during defendant's second capital sentencing proceeding is summarized in *Holden II*, 338 N.C. at 397-402, 450 S.E.2d at 879-882. The issues presented by this appeal relate only to defendant's third capital sentencing proceeding.

The State's evidence tended to show the following. In the early morning hours of 16 March 1985, defendant and Levon Hicks returned to a disco near Warsaw, North Carolina, after giving several friends a ride home. At the disco Johnnie Pat Barden asked defendant to take him and Vanessa Jones ("victim") home. Defendant agreed; Barden got in the front passenger seat of defendant's car, and the victim got into the back. The victim lived between the disco and downtown Warsaw. As defendant drove past the victim's house, Barden told defendant to stop and let the victim get out of the car. Defendant responded that he was going to take Barden home first and refused to stop the car.

Hicks testified that after they took Barden home, defendant stopped the car by the side of the road. The victim was heavily intoxicated, and she was passed out in the backseat of the car at this time. Defendant found some suspenders in the backseat and tied the suspenders around the victim's legs. Defendant then returned to the

front seat, drove the car towards Clinton, turned the car off the highway, and drove down a dirt path road.

Hicks testified that defendant stopped the car, joined the victim in the backseat, and began touching the victim's breasts. Defendant unzipped the victim's pants and told Hicks that defendant "was going to get some meat." Hicks remained outside the car while defendant and the victim were in the backseat. Upon inquiry, Hicks testified that he did not think defendant had sex with the victim, noting that defendant later told him that defendant was scared that the victim might yell and that someone might hear. According to Hicks, defendant and the victim were alone in the backseat for thirty to forty minutes.

After telling Hicks that he was afraid that the victim might yell, defendant took Hicks home. Hicks testified that the victim remained in the backseat during the drive and that the victim did not say or do anything on the way to Hicks' home. When defendant let Hicks out of the car at Hicks' home, defendant told Hicks that defendant "was going to get some meat" and that he would "[p]robably have to kill [the victim] so she won't tell anybody."

The following day Henry Sutton discovered the victim's body on a dirt path road leading to the Samuel Miller Cemetery. The victim's body was partially clothed, her pants were unzipped and partially down, and one of her shoes was removed. The autopsy revealed that the victim died of a gunshot wound to the throat, and forensic testimony linked a spent casing found at the scene to a .25-caliber gun owned by defendant. In addition to the gunshot wound, there was a six-inch cut wound across the left side of the victim's neck.

Additional facts will be presented as needed to discuss specific issues.

[1] By his first assignment of error, defendant contends that the trial court erred by admitting into evidence certain photographs; testimony with respect to four prior unadjudicated sexual assaults; and several items of real evidence, including a pocketknife, a fillet knife, and a pair of scissors.

"The Rules of Evidence do not apply in sentencing proceedings. N.C.G.S. § 8C-1, Rule 1101(b)(3) (1992). Any evidence the court 'deems relevant to sentence' may be introduced at this stage." *State v. Daughtry*, 340 N.C. 488, 517, 459 S.E.2d 747, 762 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 739 (1996); *accord*

N.C.G.S. § 15A-2000(a)(3) (1988) (amended 1994). During a capital sentencing proceeding, the State must be permitted to present any competent evidence supporting the imposition of the death penalty. *Daughtry*, 340 N.C. at 517, 459 S.E.2d at 762.

Defendant first contends that the court erred by admitting three photographs of the victim's body. Defendant argues that the photographs were not relevant. "Photographs of the victim depicting injuries to the body and the manner of death are relevant to sentencing issues and may be used to illustrate the witness' testimony in this regard." *State v. Heatwole*, 344 N.C. 1, 25, 473 S.E.2d 310, 322 (1996), *cert. denied,* —— U.S. ——, 137 L. Ed. 2d 339 (1997). In the present case the photographs at issue were admitted to illustrate testimony describing the appearance of the victim's body when it was found. We conclude that the trial court did not abuse its discretion by admitting three photographs for this purpose.

[2] Defendant next contends that the trial court erred by admitting into evidence testimony relating to four prior unadjudicated sexual assaults. Defendant argues that this evidence was not relevant to any issue at sentencing.

The first unadjudicated sexual assault involved an acquaintance of defendant who was married and eight months pregnant when she accepted a ride from defendant in 1981. As he was driving, defendant unexpectedly turned off the highway and drove down the dirt path road leading to the Samuel Miller Cemetery. The woman asked defendant what he was doing, and he responded by asking her whether she had ever met the devil. He then "pulled" a knife on the woman, threatened the woman's life and the life of her unborn baby, and demanded that she get into the back of his station wagon and have sex with him. The woman testified that she complied only because defendant had threatened her life.

The victim of the second unadjudicated sexual assault testified that she and two friends accepted a ride from defendant on a rainy day in 1979. Defendant took her friends home first. Then, as he was taking her home, defendant unexpectedly turned his car off the highway, drove the car down the dirt path road leading to the Samuel Miller Cemetery, stopped the car, and "pulled" a knife. The woman opened the car door, screamed, and jumped out of the car. Defendant tried to grab the woman's sweater, but she was able to flee. Two men who lived nearby heard the woman's screams, picked her up, and took her home.

STATE v. HOLDEN

[346 N.C. 404 (1997)]

A third woman gave testimony with respect to a 1985 incident in which defendant agreed to give her a ride to a friend's residence. During the ride defendant told the woman that he wanted to "make love" to her. Defendant then turned the car off the highway, drove down a little dirt path road, pulled a gun, and told the woman to get into the backseat. The woman attempted to run, but defendant caught her and tried to force her into the backseat. The woman successfully broke defendant's grasp and fled.

Curtis Glaspie gave testimony with respect to a fourth incident. Defendant, Larry Parker, Glaspie, and a female acquaintance were riding in a car driven by defendant. Defendant turned onto the dirt path road leading to the Samuel Miller Cemetery and stopped the car. Glaspie, Parker, and defendant exited the car. Defendant approached the passenger side of the car and told the woman to get into the backseat. When the woman refused defendant walked around the car, reached into the console, and retrieved a .25-caliber handgun. As defendant was doing this, the woman got into the backseat of the car and removed all of her clothes. Defendant ordered Glaspie to get into the backseat with the woman, but Glaspie declined. Defendant fired the gun at the feet of Glaspie, who responded by getting into the car with the woman and pretending to have sex with her. After Glaspie got out of the car, Parker entered and pretended to have sex with the woman. When Parker exited the backseat, defendant got into the backseat with the woman for a short period of time. Glaspie's testimony suggested that defendant and the woman did not engage in sexual intercourse.

The trial court gave the jury a limiting instruction with respect to the testimony relating to the four prior unadjudicated sexual assaults. The court told the jury that the evidence with respect to the alleged prior sexual assaults

shall not be received or considered by you to show []or prove that this defendant had the disposition or propensity to commit sexual assaults, []or to show that he acted in conformity therewith. Nevertheless, such evidence may be received and considered by you to show or prove a state of mind, if any, of the defendant, specifically, the element of intent . . . .

The court further instructed the jury that it must be

satisfied that there are substantial circumstances presented, including particular acts sufficiently similar in each case to logi-

cally connect and support an inference that the same person committed both offenses with similar intent. Moreover, the passage of time between the commission of the individual sexual acts slowly erodes the commonality between them.

The State argues that the challenged evidence was admissible to show that defendant intended to rape the victim and that it was thus relevant to establishing the aggravating circumstance that the murder was committed while defendant was engaged in the attempt to commit a rape, N.C.G.S. § 15A-2000(e)(5). We agree. The circumstances of the four prior unadjudicated assaults were virtually identical to the circumstances surrounding the attempted rape of the victim in this case. In each of the prior incidents, a woman who was at least casually acquainted with defendant accepted a ride from him. None of the women expected defendant to take her to the dirt path road leading to the Samuel Miller Cemetery. Defendant "pulled" a gun or a knife on all four women and ordered three of the women to get into the backseat of his car. Defendant raped one of the women and physically assaulted at least two others. In one of the four prior incidents, defendant took the woman's friends home before he drove to the dirt path road. We conclude that the facts surrounding these assaults were sufficiently similar to the case at hand to permit the jury to conclude that defendant intended to rape the victim and that the testimony at issue was properly admitted for this purpose. *See State v. Yelverton*, 334 N.C. 532, 548-49, 434 S.E.2d 183, 192 (1993); *State v. White*, 331 N.C. 604, 611-13, 419 S.E.2d 557, 561-62 (1992).

[3] Defendant argues that the evidence of defendant's prior sexual conduct was not admissible on the basis that defendant offered to stipulate to intent. We have stated that the "better rule . . . is to allow both sides to introduce evidence in support of aggravating and mitigating circumstances which have been admitted into evidence by stipulation." *State v. Taylor*, 304 N.C. 249, 279, 283 S.E.2d 761, 780 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983), *quoted in State v. Rose*, 339 N.C. 172, 201, 451 S.E.2d 211, 228 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). Defendant's offer to stipulate to intent did not preclude the State from introducing evidence which tended to establish defendant's intent to rape the victim.

[4] Defendant also argues that the evidence of defendant's prior sexual conduct was not admissible on the basis that defendant was found guilty of attempted rape at the guilt-innocence phase of the

original trial. This argument is without merit. Section 15A-2000(a)(3) provides:

> In the [capital sentencing] proceeding there shall not be any requirement to resubmit evidence presented during the guilt determination phase of the case, unless a new jury is impanelled, but all such evidence is competent for the jury's consideration in passing on punishment. Evidence may be presented as to any matter that the court deems relevant to sentence, and may include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (e) and (f). Any evidence which the court deems to have probative value may be received.

N.C.G.S. § 15A-2000(a)(3); *accord State v. McLaughlin*, 341 N.C. 426, 458, 462 S.E.2d 1, 18 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 879 (1996). In *McLaughlin* we stated that "N.C.G.S. § 15A-2000(a)(3) expressly provides that evidence presented during the guilt determination phase of a capital case is competent and admissible as a matter of law during a capital sentencing proceeding in the same case." *McLaughlin*, 341 N.C. at 458, 462 S.E.2d at 18-19. The evidence presented during the guilt-innocence phase of defendant's first trial was not before the sentencing jury in this case, and the State was required to resubmit the evidence presented in the original trial to have it considered. Further, the State was entitled to present any additional competent evidence that tended to show that defendant attempted to rape the victim. The evidence relating to the four prior unadjudicated sexual assaults was competent to show that defendant intended to rape the victim and was, therefore, admissible during the capital sentencing proceeding.

[5] Defendant next contends that the court erred by admitting into evidence the following items of real evidence: (i) a pocketknife, (ii) a fillet knife, and (iii) a pair of scissors. Defendant argues that there was no evidence to suggest that these items were used in the murder and attempted rape of the victim. The evidence at trial tended to show that the victim suffered a six-inch cut to the left side of her neck, that the initial investigation did not reveal the gunshot wound, and that officers initially believed that the cut wound was the cause of death. On the day after the killing, officers searched defendant's residence and the car that he had been driving and seized the knives and the pair of scissors. These officers saw a .25-caliber handgun but declined to seize it. Even if we were to assume *arguendo* that the

knives and scissors were not relevant to any issue at defendant's sentencing, their admission did not prejudice defendant. The evidence at trial tended to show that defendant shot the victim with a .25-caliber handgun and that the resulting wound caused the victim's death. Forensic evidence linked spent cartridges found at the scene of the murder to defendant's .25-caliber handgun. Defendant cannot show that there is a reasonable possibility that, had the knives and the scissors not been admitted into evidence, a different outcome would have been reached at trial. *See* N.C.G.S. § 15A-1443(a) (1988).

This assignment of error is overruled.

[6] Defendant next argues that the trial court's instructions to prospective jurors and extraneous comments during the proceedings entitle him to a new capital sentencing proceeding. We disagree.

He first contends that the court improperly instructed prospective jurors that any preconceived notions about the propriety of a life sentence or a death sentence rendered them unqualified to serve. The record shows that the court made the following comment:

Moreover, the jury must not have any preconceived ideas as to whether the defendant should receive a sentence of life or death . . . . [A] juror's mind must not be closed out on either one of these propositions.

The court made this comment immediately after instructing the jury that defendant did not have to present any evidence and that the State had this burden. The court subsequently instructed the jury that it must keep an open mind and listen carefully to the evidence before forming an opinion as to punishment. We conclude that the court's statement properly informed the jury that it should not decide the case until after it had heard the evidence presented at trial. The court did not state that a juror's feelings about a life sentence or the death penalty, standing alone, could render the juror unqualified to serve.

[7] Defendant next contends that extraneous and irrelevant comments by the trial court entitle him to a new capital sentencing proceeding. N.C.G.S. § 15A-1222 provides that the trial court "may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C.G.S. § 15A-1222 (1988). "Any expression as to the merits of the case, or any intimation of contempt for a party or for counsel, may be highly deleterious to that party's position in the eyes of the jury." *State v.*

*Staley,* 292 N.C. 160, 162, 232 S.E.2d 680, 682 (1977); *accord State v. White,* 340 N.C. 264, 297, 457 S.E.2d 841, 860, *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 436 (1995).

The first comment to which defendant assigns error occurred prior to jury selection and outside the presence of the jury. After granting defendant's pretrial motion to preclude the district attorney and any witness from mentioning that defendant had been previously sentenced to death, the court made a statement in which it expressed its opinion that juries should not be permitted to sentence capital defendants. The court did not express any opinion on the merits of the case and did not make any comment expressing contempt for defendant or defendant's counsel. Moreover, the comments at issue were not made in the presence of the jury.

**[8]** Defendant next complains about assertions made during the court's introductory comments to prospective jurors. Referring to the O.J. Simpson murder trial, the court told prospective jurors that "this is far from that California case and it's no semblance of how court ought to be run out there. I won't tolerate it for a minute and so don't get yourself in bad shape." The court again referred to the Simpson trial in comments made after the first panel of venire members had been selected. The court described the "California" case as ridiculous and stated that as

> a lawyer and judge, it makes me want to cry. It is just a guarantee that neither the state [n]or the defendant can get a fair trial in the state of California. It is a holocaust of errors starting with the judge. He surrenders his gavel and the robe to the media who the lawyers and defense took it away from and the jury took it away from them.

Later during jury selection the court made the following comments to venire members:

> Do not read, watch or listen to any media accounts of jury selection of this trial. Well, you're not going to watch any because I ain't going to let them in the courtroom because I don't believe in it for this purpose. It is a bad thing. That's the way Judge Ito lost his hammer out there in California and he turned that media out there and they took his gavel and the robe and the defense and the prosecution lawyer and they got them. Just a disgrace to the American Judicial [system] and I cried for it because that's not the way it works.

The court also made a statement suggesting that capital sentencing required a lot of study and ought not to be assigned to laymen.

The court's opinions with respect to how the Simpson trial was conducted and whether lay juries should make the sentencing decision in capital cases were extraneous. However, the court's remarks were made in the context of admonishing the prospective jury that both the State and defendant were entitled to a fair trial and of charging the jury not to read, watch, or listen to any media accounts relating to the case. Nothing in the court's comments constituted an expression of an opinion on any fact to be decided by the jury in the present case, and the court's comments did not denigrate defendant or defendant's trial counsel.

[9] Defendant next argues that the court prejudiced defendant by making a series of comments after swearing in a group of venire members. During its comments the court stated that jurors did not know much about the court system, that the jurors did not know much about the trial court specifically or their elected officials in general, that the Oklahoma bombing was a terrible thing, and that "[s]omething is bad wrong and it's us." The court also gave a lengthy discourse expressing its disdain for the use of the term "African-American." These comments did not include an opinion on any fact to be decided by the jury and did not disparage defendant or defendant's counsel.

[10] Finally, defendant contends that the trial court erroneously expressed an opinion to the venire on the outcome of this case by giving the following explanation to prospective jurors:

> If you think it's justifiable of the death sentence taking and considering all factors that we have been over and over again, then you're going to recommend death. If you don't think so, then you're going to recommend life. You're going to do one or the other, *but you can't say I'm going to kill him every time. I'm going to turn him loose every time because that would be wrong.*

(Emphasis added.) Defendant argues that the court expressed its disdain for a life sentence by making the emphasized portion of this statement. This comment was part of a more lengthy discourse by the judge apparently in response to a prospective juror's having attempted to speak with a court reporter during the lunch recess. In context the import of the entire statement was to assure the jurors

that all information that they needed would be given to them in the courtroom and to inform the prospective jurors again of their responsibility in the proceeding. The judge cautioned the jurors to keep an open mind. The judge had repeatedly informed the jurors that they would consider the aggravating and mitigating circumstances and would recommend a death sentence if justified by the evidence and the law or would recommend a life sentence if justified by the evidence and the law. We conclude the trial court did not express a disdain for a life sentence by making the complained-of statement.

This assignment of error is overruled.

[11] By his next assignment of error, defendant contends that the trial court erred by excluding evidence that the victim had engaged in sexual intercourse with Johnnie Pat Barden on the night of the killing. The offer of proof tended to show that Barden and the victim knew each other, that they were not dating, and that they had sexual intercourse on the night of the murder. Defendant argues that this evidence was relevant to rebut the State's contention that defendant intended to commit rape and to show that the victim consented to have sex with defendant. Defendant argues that, in conjunction with the evidence of defendant's mental retardation and organic brain damage, the victim's sexual conduct on the evening in question was relevant to defendant's perception of whether the victim consented to have sex with him and to defendant's capacity to appreciate the criminality of his conduct.

"The Rules of Evidence do not apply in sentencing proceedings. N.C.G.S. § 8C-1, Rule 1101(b)(3) (1992). Any evidence the court 'deems relevant to sentence' may be introduced at this stage." *Daughtry*, 340 N.C. at 517, 459 S.E.2d at 762; *accord* N.C.G.S. § 15A-2000(a)(3). A capital defendant must be permitted to present any aspect of the defendant's character, record, or any other circumstance which a jury could deem to have mitigating value. *Lockett v. Ohio*, 438 U.S. 586, 604, 57 L. Ed. 2d 973, 990 (1978).

We conclude that the evidence that the victim had sexual intercourse with Barden on the night of the killing was not relevant to any issue at defendant's capital sentencing hearing. The evidence that the victim had sexual intercourse with a third party did not relate to any aspect of defendant's character, his record, or any other circumstance which a jury could deem had mitigating value. This evidence did not have any tendency to show that the victim consented to having sexual intercourse with defendant. No evidence in the record sug-

gests that defendant was even aware that Barden and the victim had engaged in sexual intercourse on the night in question. Even when considered in conjunction with the evidence of defendant's limited intellectual capacity, the evidence that the victim had sexual intercourse with a third party on the night of the murder did not shed any light on whether defendant believed that the victim had consented to having sexual intercourse with him or on his capacity to appreciate the criminality of his conduct. This assignment of error is overruled.

[12] By his next assignment of error, defendant contends that the trial court erred by refusing to grant defendant's motions for directed verdict on three statutory mitigating circumstances. Defendant argues that the evidence in support of these statutory mitigating circumstances was substantial, manifestly credible, and uncontradicted, thereby entitling him to a directed verdict based on *State v. Rouse*, 339 N.C. 59, 108, 451 S.E.2d 543, 571 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 60 (1995). The three circumstances were that at the time of the crime defendant was under the influence of a mental or emotional disturbance, that at the time of the crime defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, and defendant's age at the time of the crime. "In a capital sentencing proceeding, when submitting to the jury uncontradicted evidence supporting a mitigating circumstance, the appropriate device is a peremptory instruction." *State v. Carter*, 342 N.C. 312, 325, 464 S.E.2d 272, 280 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 957 (1996). A directed verdict is not an appropriate device under such a circumstance. *Id.*

A capital defendant is entitled to a peremptory instruction when a mitigating circumstance is supported by uncontradicted evidence. *State v. Johnson*, 298 N.C. 47, 76, 257 S.E.2d 597, 618 (1979). "A peremptory instruction tells the jury to answer the inquiry in the manner indicated by the trial court *if it finds* that the fact exists as all the evidence tends to show." *State v. Alston*, 341 N.C. 198, 256, 461 S.E.2d 687, 719 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 100 (1996). The general rule is that "even where all of the evidence supports a finding that the mitigating circumstance exists and a peremptory instruction is given, the jury may nonetheless reject the evidence and not find the fact at issue if it does not believe the evidence." *Id.* at 256, 461 S.E.2d at 719-20. Accordingly, the trial court properly declined to grant defendant's motions for directed verdict.

In *State v. Flippen*, 344 N.C. 689, 477 S.E.2d 158 (1996), cited by defendant, we identified an exception to the general rule and held

that the defendant was entitled to a mandatory peremptory instruction where the State and the defendant had stipulated that the defendant had no significant history of prior criminal activity. *Flippen*, 344 N.C. at 701-02, 477 S.E.2d at 165-66. We reasoned that the stipulation established the existence of the mitigating circumstance and concluded that the trial court erred by permitting the jury to disregard the stipulation. *Id.* This case is distinguishable from *Flippen* in that the mitigating circumstances at issue were not established by a stipulation. Accordingly, the court properly declined to give mandatory peremptory instructions. This assignment of error is overruled.

**[13]** By his next assignment of error, defendant contends that the trial court erred by reopening *voir dire* after the jury was impaneled and by permitting the State to exercise a peremptory challenge to excuse a juror after the jury was impaneled.

After the close of all the evidence, the prosecutor informed the court that he had received information concerning juror Boykin. The prosecutor advised the court that he had learned that Boykin had in the last few years presented an argument against the death penalty in which she had asserted that no person had the right to take the life of another person, that too many black defendants were receiving the death penalty, and that something should be done about this. The prosecutor told the court that his source was "an officer of the court."

The prosecutor asked the court to reopen *voir dire* to permit him to ask Boykin about the statements which had been attributed to her. Over defendant's objection the trial court granted the prosecutor's request and brought Boykin to the courtroom for questioning.

Responding to questions asked by the court, the prosecutor, and defense counsel, Boykin stated that she currently believed that some persons should receive the death penalty, that she had never stated that the death penalty was not being fairly administered or that the death penalty should not be imposed, and that her responses on *voir dire* were correct. The trial court declined to excuse Boykin for cause, but the prosecutor exercised one of his remaining peremptory challenges.

Defendant contends that the trial court abused its discretion by reopening *voir dire*. He specifically contends that it was an abuse of discretion to reopen the examination of Boykin on the basis of information received from an unnamed third-party identified only as "an officer of the court."

Section 15A-1214(g) of the North Carolina General Statutes permits the trial court to reopen the examination of a prospective juror if, at any time before the jury has been impaneled, it is discovered that the juror has made an incorrect statement or that some other good reason exists. N.C.G.S. § 15A-1214(g) (1988). The decision whether to reopen the examination of a passed juror is within the sound discretion of the trial court.

*State v. Womble*, 343 N.C. 667, 678, 473 S.E.2d 291, 297 (1996), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 719 (1997). While not addressed by statute, this Court has held that the trial court may reopen the examination of a juror after the jury is impaneled and that this decision is within the sound discretion of the trial court. *State v. McLamb*, 313 N.C. 572, 575-76, 330 S.E.2d 476, 479 (1985); *State v. Kirkman*, 293 N.C. 447, 452-54, 238 S.E.2d 456, 459-60 (1977). "[O]nce the trial court reopens the examination of a juror, each party has the absolute right to exercise any remaining peremptory challenges to excuse such a juror." *Womble*, 343 N.C. at 678, 473 S.E.2d at 297.

The statements attributed to Boykin raised the possibility that Boykin had not been candid when she told the court on *voir dire* that she could consider the death penalty. The information provided by the prosecutor established good reason to reopen *voir dire* to inquire into whether Boykin made the statements attributed to her and, if so, whether she continued to hold to these beliefs and whether her beliefs would prevent or substantially impair the performance of her duties as a juror. The court was entitled to consider information provided by "an officer of the court" in determining whether to reopen *voir dire*, and doing so did not amount to an abuse of discretion. This assignment of error is overruled.

[14] By his next assignment of error, defendant contends the prosecutor's closing argument amounted to gross prosecutorial misconduct. He contends that the court erred both by failing to sustain his objections to certain arguments and by failing to intervene *ex mero motu* in others. After carefully considering each of defendant's contentions, we find them to be without merit.

"A prosecutor in a capital trial is entitled to argue all the facts submitted into evidence as well as any reasonable inferences therefrom." *State v. Gregory*, 340 N.C. 365, 424, 459 S.E.2d 638, 672 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 478 (1996). "Counsel are afforded wide latitude in arguing hotly contested cases, and the scope of this latitude lies within the sound discretion of the trial

court." *Id.* In cases where the defendant failed to object at trial, "the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Johnson,* 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979), *quoted in Gregory,* 340 N.C. at 424, 459 S.E.2d at 672.

Defendant contends that the court erred by permitting the prosecutor to comment, over defendant's objection, on the quality of life defendant would have in prison. The prosecutor argued that if the jury recommended life imprisonment, defendant would be able to watch television, play cards, play basketball, listen to music, and eat lunch with fellow inmates. Defendant contends that argument describing future prison conditions is irrelevant and speculative. We have previously approved a similar argument with respect to prison conditions on the basis that it "served to emphasize the State's position that the defendant deserved the penalty of death rather than a comfortable life in prison." *Alston,* 341 N.C. at 252, 461 S.E.2d at 717. In the present case a prison guard testified that defendant was permitted to watch television, play cards, lift weights, play basketball, go to the music room, and eat lunch with other inmates. It is reasonable to infer that defendant would continue to enjoy these privileges if sentenced to life imprisonment. We conclude that the trial court did not err by overruling defendant's objection.

**[15]** Next, defendant contends that the court erred by overruling his objection to the following argument:

> This is not a case . . . [where defendant] was provoked by someone to do this crime. [It] [i]s not a barroom killing where people get in an argument. This is not a case where the defendant finds someone has taken his wife away from him or hurt one of his children. There is no mitigating factor involving this crime, members of the jury.

Defendant contends that the prosecutor's argument improperly told jurors that circumstances not sufficient to excuse the killing or to reduce it to a lesser included offense did not have mitigating value. We do not agree with defendant's interpretation of the prosecutor's argument. In the argument at issue, the prosecutor did not state that mitigating circumstances were limited to facts which would justify the killing or to facts which would be sufficient to reduce the crime to a lesser included offense of murder. The argument that the victim

did not provoke the killing was supported by the evidence, and the prosecutor was entitled to argue that no mitigating circumstances existed. We conclude that the prosecutor's argument was well within the wide latitude afforded counsel in capital cases.

[16] Defendant failed to object to any of the remaining prosecutorial arguments; therefore, "they are reviewable only to determine whether they were so grossly improper that the trial court erred by failing to intervene *ex mero motu* to correct the errors." *Gregory*, 340 N.C. at 424, 459 S.E.2d at 672.

Defendant contends that the prosecutor made improper use of the evidence of defendant's prior unadjudicated sexual assaults. Defendant contends the prosecutor improperly argued that defendant should be sentenced for acting in conformity with these prior bad acts and asserts that the prosecutor's argument exceeded the scope of the limiting instruction.

The prosecutor first mentioned the prior unadjudicated sexual assaults early in his closing argument. After briefly mentioning the testimony relating to the prior assaults, the prosecutor commented that it is unfortunate that women do not report all rapes. He then reminded the jury that defendant had been convicted of attempted rape in 1984 and noted that this conviction was possible only because the victim of that crime had reported defendant's actions to the police. The prosecutor argued that defendant had "learned a lesson" from this conviction and had decided to kill his next victim to prevent her from testifying against him. The prosecutor's argument was supported by the evidence presented in the sentencing proceeding. After considering this portion of the prosecutor's argument in its entirety, we conclude that the brief reference to the four prior unadjudicated sexual assaults was not improper and did not require the intervention of the trial court *ex mero motu*.

[17] Later in his closing argument, the prosecutor related the facts of the four prior unadjudicated sexual assaults after telling the jury, "We have to prove his intent at the time he killed [the victim] was to commit rape . . . ." The prosecutor was entitled to argue that these facts supported the conclusion that defendant intended to rape the victim and that the jury should find the aggravating circumstance that the murder was committed while defendant was engaged in the attempt to commit a rape. The prosecutor's argument was consistent with the limiting instruction given by the trial court and was proper.

**[18]** Defendant next contends that the prosecutor improperly used the prior unadjudicated sexual assault evidence by making the following statement: "He was good to elderly people apparently, but you have to decide whether or not him [sic] being nice to an elderly person is going to allow him to do what he's done to all these women . . . ." The prosecutor made this statement after listing each of the mitigating circumstances; and it is apparent in context that he was arguing that the mitigating circumstances did not have great weight, that the mitigating circumstances did not outweigh the aggravating circumstances, and that the jury should recommend the death penalty. We conclude that the prosecutor's argument was not so grossly improper as to require the trial court to intervene *ex mero motu*.

**[19]** Defendant next contends that the prosecutor improperly attacked defendant's counsel by arguing, "[Y]ou realize how sacred life is, members of the jury. It's not sacred to this defendant and his attorneys, his two attorneys." Defendant argues that the prosecutor's arguments questioned defense counsel's humanity and religious beliefs.

"It is well-established that a trial attorney may not make uncomplimentary comments about opposing counsel, and should 'refrain from abusive, vituperative, and opprobrious language, or from indulging in invectives.'" *State v. Sanderson*, 336 N.C. 1, 10, 442 S.E.2d 33, 39 (1994) (quoting *State v. Miller*, 271 N.C. 646, 659, 157 S.E.2d 335, 346 (1967)). We agree with defendant that it was improper for the prosecutor to argue that life was not sacred to defense counsel. However, the prosecutor's comment did not rise to the level of gross impropriety. The prosecutor did not use abusive, vituperative, or opprobrious language and did not repeatedly attempt to diminish defense counsel before the jury. In fact, careful review of the prosecutor's argument permits the inference that the improper reference to defendant's attorneys was not intended. Shortly after making the improper comment, the prosecutor stated that defendant "has two fine attorneys representing him in this case. They have done an excellent job." We conclude that the prosecutor's reference to defendant's attorneys was not so grossly improper as to require the trial court to intervene *ex mero motu*.

**[20]** Defendant contends that the trial court erred by permitting the prosecutor to make the following argument:

STATE v. HOLDEN

[346 N.C. 404 (1997)]

They might want to quote from the [B]ible. . . . Talk about the tenth commandment and thou shall not kill. I contend and submit . . . [that] what the [B]ible really means is thou shalt not commit murder. In fact, if you look at Matthew One, Chapter Eighteen. It says, at the same time came the disciples unto Jesus saying who is the greatest in the kingdom of heaven. And Jesus called a little child unto him and set him in the midst of them and said verily I say unto you, except ye be converted and become as little children, ye shall not enter into the kingdom of heaven. Whosoever therefore shall humble himself as this little child, the same is greatest in the kingdom of heaven and [whosoever] shall receive one such little child in my name receiveth me, but [whosoever] shall offend one of these little ones which believe in me, it were better for him that a millstone were hanged about his neck and that he were drowned in the depth of the sea.

Defendant argues that this argument told jurors that Jesus would have hung a millstone around defendant's neck and drowned him in the depths of the sea for harming a seventeen-year-old girl.

This Court has in the past disapproved of prosecutorial arguments that made improper use of religious sentiment. *See, e.g.,* *State v. Moose,* 310 N.C. 482, 501, 313 S.E.2d 507, 519-20 (1984) (argument that the power of public officials is ordained by God and to resist them is to resist God disapproved); *State v. Oliver,* 309 N.C. 326, 359, 307 S.E.2d 304, 326 (1983) (indicating the impropriety in arguing that the death penalty is divinely inspired).

*State v. Ingle,* 336 N.C. 617, 648, 445 S.E.2d 880, 896 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 222 (1995). However, this Court "has found biblical arguments to fall within permissible margins more often than not." *State v. Artis,* 325 N.C. 278, 331, 384 S.E.2d 470, 500 (1989), *sentence vacated on other grounds,* 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

The prosecutor's argument in this case did not suggest that the law-enforcement powers of the State were divinely inspired or ordained by God or Jesus Christ. The argument did not suggest that the death penalty was divinely required. The plain language of the argument demonstrates that the prosecutor anticipated that defense counsel would refer to the Bible in arguing that the jury should not recommend the death penalty and that the prosecutor's argument was made to counter any such attempt. We conclude that the trial

court did not abuse its discretion by failing to intervene *ex mero motu.*

This assignment of error is overruled.

**[21]** By his next assignment of error, defendant contends that the trial court erred in instructing the jury on the aggravating circumstance that defendant had been previously convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3). The trial court instructed the jury, in pertinent part, as follows:

> Number one, had [defendant] been previously convicted of a felony involving the use of violence to the person? . . . All right, now attempted rape is by definition a felony involving the use of violence to the person.

On the "Issues and Recommendation as to Punishment" form, the court framed the (e)(3) circumstance in the following manner: "Had [defendant] been previously convicted of a felony involving the use of violence to the person?"

Defendant contends that the trial court erred by omitting the words "or threat" from its instructions. Defendant argues that the evidence was insufficient to establish that he had been previously convicted of a felony involving the "use of violence" and that a juror might give more weight to an aggravating circumstance involving the "use of violence" than a circumstance involving the "use or threat of violence."

Initially, we must address the standard of review. Rule 10(b)(2) sets forth the procedures for preserving instructional errors on appeal.

> A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

N.C. R. App. P. 10(b)(2).

Defendant did not object or call the omission of the words "or threat" to the trial court's attention or otherwise object to the form of

the trial court's instruction on this circumstance. He also failed on appeal to contend "specifically and distinctly" that the form of the trial court's instruction amounted to plain error. *See* N.C. R. App. P. 10(c)(4). Accordingly, defendant has waived appellate review of this assignment of error. *See State v. King*, 342 N.C. 357, 364, 464 S.E.2d 288, 293 (1995). Nevertheless, in the exercise of our discretion under Rule 2 of the Rules of Appellate Procedure, we elect to consider defendant's contention based on plain error.

In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected. *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993). We conclude that the error in the trial court's instructions did not rise to the level of plain error.

We agree with defendant that the trial court erred by omitting the term "or threat" from its instruction on the (e)(3) circumstance. Under N.C.G.S. § 15A-2000(e)(3), the required prior felony

> can be either one which has as an element the involvement of the use or threat of violence to the person, such as rape or armed robbery, *State v. Hamlette*, 302 N.C. 490, 276 S.E.2d 338 (1981), or a felony which does not have the use or threat of violence to the person as an element, but the use or threat of violence to the person was involved in its commission.

*State v. McDougall*, 308 N.C. 1, 18, 301 S.E.2d 308, 319, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983). In *Holden II* we stated "that for purposes of N.C.G.S. § 15A-2000(e)(3), rape is a felony which has as an element the use *or threat* of violence to the person" and "that where rape is deemed to have as an element the use *or threat* of violence, the 'felony of attempt to commit rape is therefore by nature of the crime a felony which *threatens violence.*' " *Holden II*, 338 N.C. at 404-05, 450 S.E.2d at 883-84 (emphasis added) (quoting *State v. Green*, 336 N.C. 142, 170, 443 S.E.2d 14, 30, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994)). We concluded that "the judgment showing that the defendant had previously been convicted of attempted second-degree rape was sufficient, standing alone, to require that the trial court submit the aggravating circumstance that the defendant had committed a prior felony involving the use *or threat* of violence to the person." *Id.* at 405, 450 S.E.2d at 884 (emphasis added). We did

not hold that attempted second-degree rape always constitutes a crime involving the use of violence.

In the sentencing proceeding from which this appeal is taken, the State introduced the judgment and commitment showing defendant's prior conviction of attempted second-degree rape. This evidence was sufficient to require the court to submit the aggravating circumstance that defendant had previously been convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3). However, the State did not present any other evidence in support of the (e)(3) circumstance; and we are thus constrained to conclude that the trial court erred by omitting the "or threat" language from its instructions.

The trial court's error, however, did not rise to the level of plain error. *See White*, 340 N.C. at 299, 457 S.E.2d at 862. The State presented uncontroverted evidence that defendant had been previously convicted of attempted second-degree rape. Attempted second-degree rape is a crime involving the use or threat of violence to the person; and a conviction of attempted second-degree rape, standing alone, is sufficient to establish the existence of the circumstance. The error in the instruction did not reduce the State's burden of proof or favor the State in any way; and we conclude that a reasonable probability does not exist that the jury would have reached a different result had the words "or threat" been included in the instruction. Accordingly, the omission of the words "or threat" from the jury instructions on the (e)(3) aggravating circumstance did not rise to the level of plain error.

This assignment of error is overruled.

[22] By his next assignment of error, defendant contends that the trial court's peremptory instructions on the N.C.G.S. § 15A-2000(f)(2) and (f)(6) mitigating circumstances erroneously heightened his burden of proof by requiring the jury to find the uncontradicted evidence supporting the circumstances to be "credible and convincing."

Defendant requested the following peremptory instruction with respect to both the (f)(2) and the (f)(6) circumstances:

All of the evidence tends to prove that this statutory mitigating circumstance exists. If one or more of you finds the evidence to be *credible and the circumstance to be true,* as all the evidence tends to show, you will answer "yes" . . . .

STATE v. HOLDEN

[346 N.C. 404 (1997)]

(Emphasis added.) The trial court did not give the peremptory instructions requested by defendant and instead gave the peremptory instructions to which defendant assigns error. After carefully reviewing the entirety of the trial court's instructions on the (f)(2) and (f)(6) mitigating circumstances, we conclude that it is not reasonably likely that the jury applied the peremptory instructions given by the court in a way that prevented the jury from considering constitutionally relevant evidence. *See Boyde v. California*, 494 U.S. 370, 380, 108 L. Ed. 2d 316, 329 (1990).

Prior to instructing the jury on each of the mitigating circumstances, the trial court instructed the jury that mitigating circumstances must be established by a preponderance of the evidence:

> The existence of any mitigating circumstance must be established by a preponderance of the evidence. That is, the evidence taken as a whole must satisfy you not beyond a reasonable doubt, but simply satisfy you that any mitigating circumstance exists. If the evidence satisfies any of you that a mitigating circumstance exists, you would indicate that finding on the issues and recommendation form.

The court subsequently instructed the jury on each of the mitigating circumstances, and the trial court's instructions with respect to the (f)(2) and (f)(6) mitigating circumstances reiterated that defendant had the burden of establishing each by a preponderance of the evidence. In instructing on the (f)(2) mitigating circumstance, the trial court charged:

> You would find this mitigating circumstance if you find the defendant is mentally retarded or suffers from organic brain damage and that as a result the defendant was under the influence of a mental or emotional disturbance when he killed the victim. Now, the defendant here has the burden of establishing this mitigating circumstance by the preponderance of the evidence as I have explained to you. Accordingly, I charge that if one or more of you find the facts to be as all the evidence tends to show that this mitigating circumstance existed is uncontradicted, let me start again. To show this mitigating circumstance existence is uncontroverted and further find it to be credible and convincing, you will so indicate by having your foreman write yes in the space provided after mitigating circumstance number one on the issues and recommendation form.

The pertinent portion of the trial court's peremptory instruction on the (f)(6) mitigating circumstance is as follows:

> You would find this mitigating circumstance if you find that the defendant was mentally retarded or suffered from organic brain damage and that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Now again the defendant has the burden of establishing this mitigating circumstance by the preponderance of the evidence as I have explained it to you. Accordingly, I charge that if one or more of you find the facts to be as all the evidence tends to show this mitigating circumstance's existence is uncontradicted and further find it to be credible and convincing, you will so indicate by having your foreman write yes in the space provided after this mitigating circumstance number two on the issues and recommendation form.

Defendant argues that the court erred by requiring the jury to find the evidence supporting the circumstances to be "credible and convincing." Although admittedly not a model of clarity, the instructions did not, in our judgment, place a more stringent burden of proof on defendant.

The correct burden of proof for establishing the existence of mitigating circumstances is by a "preponderance of the evidence." *State v. Payne*, 337 N.C. 505, 531, 448 S.E.2d 93, 108 (1994), *cert. denied*, 514 U.S. 1038, 131 L. Ed. 2d 292 (1995). The trial court's instructions on the mitigating circumstances at issue correctly informed the jury that defendant's burden of proof was by a preponderance of the evidence. In reviewing the instructions challenged by defendant to determine whether any ambiguity prejudiced him, our inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction[s] in a way that prevents the consideration of constitutionally relevant evidence." *Boyde*, 494 U.S. at 380, 108 L. Ed. 2d at 329; *accord Estelle v. McGuire*, 502 U.S. 62, 72, 116 L. Ed. 2d 385, 399 (1991); *see also State v. Spruill*, 338 N.C. 612, 657, 452 S.E.2d 279, 303 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 63 (1995).

"[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47, 38 L. Ed. 2d 368, 373 (1973), *quoted in State v. Hartman*, 344 N.C. 445, 467, 476 S.E.2d 328, 340 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 708, 65 U.S.L.W. 3727 (1997). "[I]n determining the propriety of the trial judge's charge to the jury,

the reviewing court must consider the instructions in their entirety, and not in detached fragments." *State v. Wright*, 302 N.C. 122, 127, 273 S.E.2d 699, 703 (1981), *quoted in Hartman*, 344 N.C. at 467, 476 S.E.2d at 340.

"A peremptory instruction tells the jury to answer the inquiry in the manner indicated by the trial court *if it finds* that the fact exists as all the evidence tends to show." *Alston*, 341 N.C. at 256, 461 S.E.2d at 719. The general rule is that "even where all of the evidence supports a finding that the mitigating circumstance exists and a peremptory instruction is given, the jury may nonetheless reject the evidence and not find the fact at issue if it does not believe the evidence." *Id.* at 256, 461 S.E.2d at 719-20. We have stated that "even where all of the evidence supports a finding that the mitigating circumstance exists and a peremptory instruction is given, the jury is still free to reject the circumstance if it does not find the evidence credible or convincing." *State v. Lyons*, 343 N.C. 1, 17, 468 S.E.2d 204, 211, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 167 (1996). Jurors have a right to reject uncontradicted evidence supporting a mitigating circumstance "if they lack faith in its credibility." *Carter*, 342 N.C. at 322, 464 S.E.2d at 279. The record shows that the court repeatedly instructed the jury that defendant's burden of proof was by a preponderance of the evidence. In the context of the entire charge, we are satisfied the jury would have applied the "credible and convincing" requirement in the peremptory instructions to mean that it must believe the evidence to find that the circumstances existed and that it could reject the circumstance if it did not find the evidence to be credible or convincing. We conclude that there is no reasonable likelihood that the jury applied the court's peremptory instructions in a way that prevented the jury from considering constitutionally relevant evidence. This assignment of error is overruled.

By his next assignment of error, defendant contends that the trial court erred by requiring the jury to find that nonstatutory mitigating circumstances had mitigating value. As defendant concedes, we have previously considered and rejected his contention. *State v. Fullwood*, 323 N.C. 371, 373 S.E.2d 518 (1988), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). Defendant has advanced no persuasive argument for this Court to reconsider its opinion on this issue.

Defendant next contends that the trial court's instructions with respect to sentencing issues three and four violated the Eighth

Amendment to the United States Constitution. He concedes that we have previously considered and rejected his contention. *State v. Jones*, 339 N.C. 114, 451 S.E.2d 826 (1994), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995).

**[23]** By his next assignment of error, defendant contends that sentencing to death a mentally retarded person with moderate organic brain damage violates state and federal constitutional provisions. The Eighth Amendment to the United States Constitution does not forbid the execution of mentally retarded persons. *Penry v. Lynaugh*, 492 U.S. 302, 335, 106 L. Ed. 2d 256, 289 (1989); *State v. Best*, 342 N.C. 502, 515, 467 S.E.2d 45, 53, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 139 (1996). We have similarly refused to hold that the North Carolina Constitution categorically prohibits the execution of mentally retarded persons. *State v. Norwood*, 344 N.C. 511, 531, 476 S.E.2d 349, 357 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 500 (1997).

> So long as sentencers can consider and give effect to mitigating evidence of mental retardation in imposing sentence, an individualized determination whether "death is the appropriate punishment" can be made in each particular case.

*Penry*, 492 U.S. at 340, 106 L. Ed. 2d at 292. In the present case defendant was permitted to present evidence of his mental retardation and organic brain damage; and the trial court submitted nonstatutory mitigating circumstances permitting the jury to consider whether defendant was retarded, whether he was suffering from organic brain damage, and whether either of these circumstances had mitigating value. The jury was thus permitted to consider and give effect to the evidence of defendant's mental retardation and organic brain damage. This assignment of error is overruled.

## PROPORTIONALITY

**[24]** Having found no error in the capital sentencing proceeding, we must undertake our statutory duty to determine whether (i) the evidence supports the aggravating circumstances found by the jury; (ii) passion, prejudice, or any other arbitrary factor influenced the imposition of the death sentence; and (iii) the death sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2).

Defendant was found guilty of first-degree murder under the theories of premeditation and deliberation and felony murder. Following the capital sentencing proceeding, the jury found the

aggravating circumstances that (i) defendant had been previously convicted of a felony involving the use of violence to the person, N.C.G.S. § 15A-2000(e)(3); (ii) the murder was committed for the purpose of avoiding a lawful arrest, N.C.G.S. § 15A-2000(e)(4); and (iii) the murder was committed while defendant was attempting to commit rape, N.C.G.S. § 15A-2000(e)(5). The jury found the statutory mitigating circumstance that the murder was committed while defendant was under the influence of a mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2). The jury rejected the statutory mitigating circumstances (i) that the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6), and (ii) the age of defendant at the time of the murder, N.C.G.S. § 15A-2000(f)(7). The jury also found the statutory catchall mitigating circumstance, N.C.G.S. § 15A-2000(f)(9), and all five of the nonstatutory mitigating circumstances submitted for its consideration.

We have reviewed the evidence supporting each of the aggravating circumstances and conclude that the evidence supported each of them. We further conclude from our review of the record that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. We must now determine whether the sentence of death in this case is excessive or disproportionate.

One purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *Holden I*, 321 N.C. at 164-65, 362 S.E.2d at 537. Another purpose is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). We compare this case to others in the pool, which we defined in *State v. Williams*, 308 N.C. 47, 79-80, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983), and *State v. Bacon*, 337 N.C. 66, 106-07, 446 S.E.2d 542, 563-64 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995), that "are roughly similar with regard to the crime and the defendant." *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985).

"In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate." *State v. Burke*, 343 N.C. 129, 162, 469 S.E.2d 901, 918, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 409

(1996). This Court has determined that the sentence of death was disproportionate in seven cases. *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983). The instant case is not substantially similar to any of the cases in which this Court has found the death penalty disproportionate. Most notably, we have never found a death sentence disproportionate in a first-degree murder case where the victim was sexually assaulted, *State v. Kandies,* 342 N.C. 419, 455, 467 S.E.2d 67, 87, *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 167 (1996), or where the murder was committed for the purpose of eliminating a witness, *State v. Bishop,* 343 N.C. 518, 561, 472 S.E.2d 842, 865 (1996), *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 723 (1997).

The most significant distinguishing feature of this case is that the murder was committed for the purpose of eliminating a witness.

> [W]e have never found a death sentence to be disproportionate in witness-elimination cases. The reason is clear: "Murder can be motivated by emotions such as greed, jealousy, hate, revenge, or passion. The motive of witness elimination lacks even the excuse of emotion." *State v. Oliver,* 309 N.C. 326, 375, 307 S.E.2d 304, 335 (1983). . . . The purposeful and deliberate killing of witnesses or possible witnesses strikes a blow at the entire public—the body politic—and directly attacks our ability to apply the rule of law and to bear witness against the transgressors of law in our society.

*State v. McCarver,* 341 N.C. 364, 407, 462 S.E.2d 25, 49 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 482 (1996). We have recognized that juries have frequently imposed the death penalty in cases involving witness elimination. *See id.* at 408-09, 462 S.E.2d at 50.

The evidence tended to show that in 1984 defendant told Johnnie Lee Williams that he was going to kill the next girl he raped to keep her from talking. In March of 1984 defendant told Jessie Sutton, Jr. that defendant had just been released from prison for rape and that if he had known "that girl was going to tell on me, I would have killed her." On the night of the killing, defendant told Levon Hicks that

defendant "was going to get some meat" and that he would "[p]roba-
bly have to kill [the victim] so she won't tell anybody." This evidence
strongly tended to show that defendant coldly and callously planned
to rape and kill the victim and that he killed her to prevent her from
testifying against him. After comparing this case to similar cases in
the pool used for proportionality review, we conclude that defend-
ant's death sentence is not excessive or disproportionate.

We hold that defendant received a fair capital sentencing pro-
ceeding free from prejudicial error. Comparing defendant's case to
similar cases in which the death penalty was imposed and consider-
ing both the crime and defendant, we cannot hold as a matter of law
that the death penalty was disproportionate or excessive.

NO ERROR.